# Wilkes-Barre et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued October 8, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Howard E. Kennedy,* City Solicitor, and *R. Lawrence Coughlin,* County Solicitor, for appellants.

*Charles E. Thomas,* with him *Gabriel D. Weiss* and *Leon Weinroth,* for Public Utility Commission, appellee.

*H. Ray Pope, Jr.,* with him *William F. Schutte, Phil H. Lewis,* Deputy Attorneys General, *Thomas C. Evans,* and *T. McKeen Chidsey,* Attorney General, for Department of Highways, intervening appellee.

*Thomas B. Miller, Windsor F. Cousins* and *L. K. Connell,* for Pennsylvania R. R. Co., appellee.

*John C. Phillips,* for Lehigh Valley R. R. Co., appellee.

*H. B. Thomas,* for Central R. R. Co., appellee.

OPINION BY RENO, J., January 14, 1949:

Exercising its broad powers over railroad grade crossings, the Public Utility Commission, on February 17, 1947, ordered the Department of Highways to reconstruct a bridge in Wilkes-Barre, and allocated the cost: Lehigh Valley Railroad Co., $22,000; Pennsylvania Railroad Co., $5,000; Central Railroad Co. of Pennsylvania, $6,000; City of Wilkes-Barre, $35,000; County of Luzerne, $35,000; and the State Department of Highways the estimated balance, $326,000. The city and county appealed. The railroads were permitted to intervene as appellants, and the Department of Highways as an appellee.

Appellants rest solely upon the Act of May 23, 1945, P. L. 867, §1, 36 PS §105, amending the Act of June 22, 1931, P. L. 720, §4, and which, so far as is here pertinent, provides: "But all bridges and viaducts on such State highways in cities of the . . . third class, [of which Wilkes-Barre is one] which are being maintained by the city or county, shall be taken over by the Department of Highways upon the effective date [July 1, 1945] of this amendment, and, shall, thereafter, be constructed, reconstructed, repaired and maintained at the sole expense of the Commonwealth". The Act does not contain a clause repealing, amending or referring to the Public Utility Law, but appellants claim nonetheless that the Act amended the Law.

At the same session, the legislature enacted the Act of June 1, 1945, P. L. 1242, 36 PS §670-101 et seq., short-titled "State Highway Law", for the purpose of "amending, revising, consolidating and changing the laws administered by the Secretary of Highways . . .", and by §701, 36 PS §670-701, provided: "The assumption and taking over of any such bridge [on a State highway] by the Commonwealth shall not be construed to relieve any person, firm, association, or corporation from any obligation for the construction or maintenance of such bridge

under any agreement or order of court or under any order of the Public Utility Commission heretofore or hereafter made." The 1945 highway code expressly repealed §4 of the Act of June 22, 1931, of which the Act of 1945 is an amendment, and upon which appellants' contention is based. No date was designated upon which the new highway code should become effective, and hence its effective date was September 1, 1945. The amendatory Act was therefore the first to become effective. Statutory Construction Act of May 28, 1937, P. L. 1019, §4, 46 PS §504.

The Statutory Construction Act also provides, §72, 46 PS §572: "Whenever any existing law, incorporated into and repealed by a code, is also amended by other legislation enacted at the same session of the Legislature, such separate amendment shall be construed to be in force, notwithstanding the repeal by the code of the law it amends, and such amendment shall be construed to prevail over the corresponding provisions of the code." Hence the Act of May 23, 1945 was in effect at least from July 1, 1945 to September 1, 1945 and this period was long enough, appellants claim, to absolve them from the obligation to contribute to the cost of reconstructing the bridge.

The Public Utility Law of May 28, 1937, P. L. 1053, §§409-411, as amended, 66 PS §§1179-1181, confers exclusive power upon the Public Utility Commission to regulate the construction, relocation, alteration, protection and abolition of the crossings of one utility by another, and to require that the work incident thereto "be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth." This has been the law and the public policy of the State since the enactment of the original Public Service Company Law of July 26, 1913, P. L. 1374. (Art. V. §12).

What is the reach of the Act of May 23, 1945? By its title it purports to amend the Act of 1931; it recites the title of the latter Act; and adds thereto, "requiring the Department of Highways to take over bridges and viaducts on State highways in cities of the second class A and third class." It does not touch upon, refer to, amend or repeal the Public Utility Law or any part or section of it. Was it within the intention of the General Assembly of 1945, while passing an amendment dealing only with the law relating to State highways and bridges upon them, to amend also the Public Utility Law? 

The Constitution provides: "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." Art. III, §6. This provision does not prohibit amendment of existing laws by general, independent, substitute or separate legislation, and an act which is complete in itself does not violate this clause though it may have an amendatory effect upon other and uncited statutes by implication or indirection. *Gallagher v. MacLean,* 193 Pa. 583, 45 A. 76; *Com. v. Muir,* 180 Pa. 47, 36 A. 413; *Bell v. Abraham,* 343 Pa. 169, 22 A. 2d 753. But it does relate to express amendments, and an express amendment of a specifically recited statute does not by implication amend another statute upon a related but distinct subject. *Searight's Est.,* 163 Pa. 210, 29 A. 800.

The Constitution also provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." Art. III, §3. Titles to acts may be considered in their construction. Statutory Construction Act, supra, §54, 46 PS §554. The title limits the scope of an act. *Pa. R. R. Co. v. Riblet,* 66 Pa. 164; *Perkins v. Philadelphia,* 156 Pa. 554, 27 A. 356. So considered, the Act of May 23, 1945, extends no further than the limits of its

title, and it does not by implication amend or repeal the Public Utility Law.

The two constitutional provisions, taken together, forbid blind amendments, that is, express amendments which do not place the proposed act before the legislators in a form that will enable them without reference to a prior act to understand clearly the change proposed to be made in the statutes of the State. 2 Sutherland Statutory Construction, (3rd ed.) §1919. Although the title and text of the Act of May 23, 1945, clearly indicate that the subject of the Act is to amend the Act of 1931, and "so much thereof as is . . . amended . . ." is "re-enacted and published at length" therein, there is no mention or recital of the Public Utility Law. It is not mentioned in the title nor recited in the body of the Act. So much thereof as is, or was proposed in the legislature to be, amended has not been re-enacted and published at length. Since the Public Utility Law is not within the text it is not within the purview of the amendatory act. Moreover, if the legislature had actually attempted to do what appellants contend it did by implication, that is, amend the Act of 1931 which relates to the State highway system and also the statute which regulates public utilities, in and by one act, it would undoubtedly have been declared unconstitutional, as containing more than one subject. *Stewart v. Hadley,* 327 Pa. 66, 193 A. 41; *Com. ex rel. v. Dale Borough,* 272 Pa. 189, 115 A. 873; cf. *Com. v. Schulte,* 26 Pa. Superior Ct. 95.

The rule is stated more succinctly by Sutherland, op. cit. §1913: "An implied amendment is an act which purports to be independent of, but which in substance alters, modifies, or adds to a prior act. To be effective, an amendment of a prior act ordinarily must be express. Amendments by implication, like repeals by implication, are not favored and will not be upheld in doubtful cases. The legislature will not be held to have changed a law it did not have under consideration while enacting a

later law, unless the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together."

Neither the phrase in the title of the act, "requiring the Department of Highways to take over bridges", nor the broad language of its text, "All bridges . . ." impinge upon or diminish the plenary power of the Public Utility Commission. That power is not confined to bridges, nor primarily concerned with bridges. It extends to all crossings by utilities engaged in transportation of passengers whether the crossing is "at grade or above or below grade, or at the same or different levels": Public Utility Law, supra, §409 (a), 66 PS §1179. A bridge may be necessary to accomplish the power conferred upon the commission, but it is not the exclusive means of eliminating a grade crossing. So that, while a bridge may be the most appropriate and only feasible method of abolishing and protecting a grade crossing, it cannot be said that the cited sections of the Public Utility Law deal fundamentally with bridges and are therefore amenable to amendment or repeal by a law which relates exclusively to State highway bridges. The Public Utility Law is a broader law, including power in respect of, but not restricted to, bridges on highways, and, without a clear declaration in an amendment, we cannot assume that the General Assembly in dealing only with the narrow subject of bridges on State highways intended also to affect, alter or even touch bridges erected to abolish grade crossings.

Bridges may be classified, *Seabolt v. Commissioners*, 187 Pa. 318, 41 A. 22, and if the legislature has not precisely classified them, it has recognized differences between bridges erected to abolish grade crossings and those constructed upon other portions of the highways. Both come into being by an exercise of the police power exerted by statutes; but the former are creations of the commission as an incident in the performance of a spe-

cial power; and the latter are provided by various local authorities or the State Department of Highways. Cf. *Somerset Co., v. P. U. C.,* 132 Pa. Superior Ct. 585, 598, 1 A. 2d 806; *Conshohocken Borough v. P. U. C.,* 135 Pa. Superior Ct. 295, 302, 306, 5 A. 2d 590. Recognition of two categories of bridges results in this: first, an express amendment of the law relating to one category will not by implication be stretched to cover the other; second, since they deal with separate categories, there is no irreconciliable conflict between an amendment affecting one class and an existing statute relating to another class; and third, the amendatory act and the unamended statute can stand together, and both can be enforced in the fields of the law to which they respectively pertain.

A similar legislative situation prevailed in *Searight's Est.,* supra. An act of 1887 expressly amended an act of 1827. It was claimed that it also amended an act of 1834, since that act also related to judgments, the subject of the amendatory 1887 act. In his opinion Mr. Justice MITCHELL, later Chief Justice, said (p. 216): "The act of 1887 does not undertake to amend the act of 1834, and therefore did not need to repeat its terms. The constitutional provision has reference to express amendments only. Its object, like that of section two [three] of the same article, requiring each act to have its subject clearly expressed in the title, was to secure, to the legislators themselves and others interested, direct notice, in immediate connection with proposed legislation, of its subject and purpose."

Later, in the same opinion, MITCHELL, J., said (p. 218): "The act of 1827 was a supplement to the act of 1798, and both dealt directly with the subject of judgments only. The act of 1834 was entitled 'an act relating to executors and administrators,' and not only its title, but its seventy carefully drawn sections show that it was intended to deal directly only with that subject, and touched the subject of judgments only incidentally

in connection with the estates of decedents. The legislature therefore in 1887 had before it a clear distinction between classes of judgments, existing for more than half a century under separate statutes, and when under such circumstances it took up one of those statutes for amendment, we must assume that it legislated with that established distinction in view, until it shows a clear intention to disregard or abolish it. Notwithstanding therefore the generality and the negative character of the language of the act of 1887 we are of opinion it has not affected the act of 1834." Nothing can be clearer than that an express amendment will not affect a statute not cited for amendment, and especially not where the legislature has recognized in its prior legislation a distinction between the objectives of its several statutory pronouncements.

The result is that the Act of May 23, 1945, stands, but only as an amendment to the legislation relating to bridges on State highways. It does not amend or repeal the Public Utility Law. "All bridges" and the further mandates in the amendment must be taken to include certain bridges on State highways, excluding however bridges erected pursuant to the grade crossing powers of the commission. This interpretation, founded upon a consideration of the text of the legislation, accords, we think, with the *actual* intention of the legislature. The members of the Public Utility Commission are "deputies of the legislature", *Com. ex rel. Attorney General v. Benn*, 284 Pa. 421, 432, 131 A. 253, and it does not seem reasonable to suppose that the General Assembly would reduce their power, and, what is more to the point, cast the entire cost of grade eliminations upon the Commonwealth, except by an act aimed directly at that target. It would not knowingly, we venture to assert, overturn a public policy in effect since 1913, and thereby relieve utilities of the duty of contributing to projects from

which they draw substantial benefits, except by an express amendment to the Public Utility Law.

That the bridge in litigation is a public utility crossing is free from doubt. It crosses railroads only, and it was erected in 1925 by the City of Wilkes-Barre, assisted by contributions of the County of Luzerne and the railroads, pursuant to an order of the commission dated June 9, 1924.

The order under review was issued in a proceeding begun in 1941. The commission argued that, since the proceeding was pending when the Act of May 23, 1945, was enacted, it was not affected by that Act, and relied upon the "saving clause" of the Statutory Construction Act, supra, §96, 46 PS §596. Having held that the Act of May 23, 1945, did not amend the Public Utility Law, we do not reach the question propounded by the commission. And, for obvious reasons, we have not decided questions growing out of agreements between the city and the railroads relative to the bridge.

Order affirmed.