Butler City, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued April 18, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Luther C. Braham*, City Solicitor, with him *Willis A. MacDonald*, County Solicitor and *Darrell L. Gregg*, for appellant.

*Lloyd S. Benjamin*, Assistant Counsel, with him *Charles E. Thomas*, Counsel, for Public Utility Commission, appellee.

*John R. Rezzolla, Jr.*, with him *Thomas C. Evans*, *Phil H. Lewis*, Deputy Attorney General, *T. McKeen Chidsey*, Attorney General, and *William F. Schutte*, for Department of Highways, intervening appellee.

OPINION BY DITHRICH, J., September 27, 1950:

There are two viaducts in the City of Butler which are the subjects of these two appeals. The appeals were

joined in by the County of Butler, were argued at the same time, involve the same questions, and will be disposed of in this one opinion.

It appears that at a point in the City of Butler, Butler County, about five blocks south of its intersection with Jefferson Street, State Highway Route 72 (Main Street) is carried across and above the grade of the two main tracks of Pittsburgh, Bessemer and Lake Erie Railroad Company (operated by Bessemer and Lake Erie Railroad Company) and the single track of The Pittsburgh and Western Railroad Company (operated by The Baltimore and Ohio Railroad Company) and across the channel of Connoquenessing Creek by means of a steel viaduct approximately 838 feet in length. This is known as the Main Street Viaduct.

It further appears that at a point in the City of Butler, Butler County, about 1500 feet east of Main Street, State Highway Route 10030 (Wayne Street) is carried across and above the grade of the two main tracks of Pittsburgh, Bessemer and Lake Erie Railroad Company (operated by Bessemer and Lake Erie Railroad Company) and the six tracks of The Pittsburgh and Western Railroad Company (operated by The Baltimore and Ohio Railroad Company) and across the channel of Connoquenessing Creek by means of a steel and concrete viaduct approximately 866 feet in length. This is known as the Wayne Street Viaduct.

There is no doubt that both viaducts are public utility crossings. The Main Street Viaduct was erected pursuant to authority of the Public Service Commission in 1916. No provision was made for the maintenance and repair of the viaduct, but the City of Butler maintained it from the time of its construction to July 1, 1945. The Wayne Street Viaduct was built by the Borough, now the City, of Butler in compliance with an order of the Public Service Commission in 1914. It

likewise did not provide for the cost of maintenance and repair, but the City has maintained and repaired it since its construction to July 1, 1945. Subsequent to July 1, 1945, the Pennsylvania Department of Highways began proceedings before the Public Utility Commission of Pennsylvania for repair and alteration of the existing crossings above grade.

The Commission ordered that the existing crossings above grade be repaired and altered in accordance with the detailed construction plans prepared by the Department of Highways and submitted of record and further ordered the Department of Highways to proceed with the work in accordance with the approved plans and allocated the costs among the various parties. These appeals question the authority of the Public Utility Commission to charge a portion of the costs to the City of Butler. Its contention is that the jurisdiction of the Commission is limited to construction, alteration, relocation or abolition of crossings. It bases its contention largely upon the Act of May 23, 1945, P. L. 867, §1, 36 PS §105, amending the Act of June 22, 1931, P. L. 720, §4, and which, so far as is here pertinent, provides: "But all bridges and viaducts on such State highways in cities of the . . . third class [of which Butler is one], which are being maintained by the city or county, shall be taken over by the Department of Highways upon the effective date [July 1, 1945] of this amendment, and shall, thereafter, be constructed, reconstructed, repaired and maintained at the sole expense of the Commonwealth."

Appellant states its position to be as follows:

"(a) Since these are cases of the crossing of public utilities by a state highway, the jurisdiction of the Public Utility Commission is limited to construction, alteration, relocation or abolition of the crossing. 1937 P. L. 1053; 66 PS 1179 et seq.

"(b) Although the Public Utility Commission in the case at bar included the word 'alterations' in describing the proposed repairs to be made by the Department of Highways (to bring the case within its jurisdiction), they were none the less simply repairs, and calling them alterations did not make them alterations.

"(c) That as a consequence of a and b above, the cost of repairs must be borne by the Department of Highways under the Act of May 23, 1945, P. L. 867; 36 PS 105."

In *Wilkes-Barre v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 210, 63 A. 2d 452, speaking through Judge RENO, we said (pages 213, 214, 215): "The Act does not contain a clause repealing, amending or referring to the Public Utility Law, but appellants claim nonetheless that the Act amended the Law. . . .

"The Public Utility Law of May 28, 1937, P. L. 1053, §§409-411, as amended, 66 PS §§1179-1181, confers exclusive power upon the Public Utility Commission to regulate the construction, relocation, alteration, protection and abolition of the crossings of one utility by another, and to require that the work incident thereto 'be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth.' This has been the law and the public policy of the State since the enactment of the original Public Service Company Law of July 26, 1913, P. L. 1374. (Art. V. §12).

"What is the reach of the Act of May 23, 1945? By its title it purports to amend the Act of 1931; it recites the title of the latter Act; and adds thereto, 'requiring the Department of Highways to take over bridges and viaducts on State highways in cities of the second class. A and third class.' It does not touch upon, refer to,

amend or repeal the Public Utility Law or any part or section of it. Was it within the intention of the General Assembly of 1945, while passing an amendment dealing only with the law relating to State highways and bridges upon them, to amend also the Public Utility Law?"

After considering the title to the Act (Statutory Construction Act of May 28, 1937, P. L. 1019, §54, 46 PS §554) we concluded that: "So considered, the Act of May 23, 1945, extends no further than the limits of its title, and it does not by implication amend or repeal the Public Utility Law. . . .

"Neither the phrase in the title of the act, 'requiring the Department of Highways to take over bridges', nor the broad language of its text, 'All bridges . . .' impinge upon or diminish the plenary power of the Public Utility Commission. That power is not confined to bridges, nor primarily concerned with bridges. It extends to all crossings by utilities engaged in transportation of passengers whether the crossing is 'at grade or above or below grade, or at the same or different levels': Public Utility Law, supra, §409 (a), 66 PS §1179. A bridge may be necessary to accomplish the power conferred upon the commission, but it is not the exclusive means of eliminating a grade crossing. So that, while a bridge may be the most appropriate and only feasible method of abolishing and protecting a grade crossing, it cannot be said that the cited sections of the Public Utility Law deal fundamentally with bridges and are therefore amenable to amendment or repeal by a law which relates exclusively to State highway bridges. The Public Utility Law is a broader law, including power in respect of, but not restricted to, bridges on highways, and, without a clear declaration in an amendment, we cannot assume that the General Assembly in dealing only with the narrow subject of

bridges on State highways intended also to affect, alter or even touch bridges erected to abolish grade crossings. . . .

"The result is that the Act of May 23, 1945, stands, but only as an amendment to the legislation relating to bridges on State highways. It does not amend or repeal the Public Utility Law. 'All bridges' and the further mandates in the amendment must be taken to include certain bridges on State highways, excluding however bridges erected pursuant to the grade crossing powers of the commission. This interpretation, founded upon a consideration of the text of the legislation, accords, we think, with the *actual* intention of the legislature." *Wilkes-Barre v. Pa. P. U. C.,* supra, pages 215, 216, 217, 219.

Since our decision in the *Wilkes-Barre* case decided nothing more than that the Act of May 23, 1945, P. L. 867, 36 PS §105, does not apply to public crossings, it is not necessary to determine whether certain repairs were made under the guise of alterations; and we certainly did not in the *Wilkes-Barre* case, nor do we here, decide that the cost of repairs of a public crossing above grade in cities of the second class A and third class must be borne by the Department of Highways since the enactment of the Act of May 23, 1945. Nor is it necessary for us to consider the allocation of costs for damages due for property taken, injured or destroyed, nor the so-called "saving clause" contained in the order.

Orders affirmed.