## Commonwealth v. Zeidenstein, etc.

*Ruth Forsht, Deputy Attorney General,* for Commonwealth.

*Allen S. Gordon,* for defendant.

BROWN, J., September 3, 1952.—This is an appeal from a summary conviction. Defendant Hyman Zeidenstein, trading as Zeidenstein Brothers, after hearing on February 14, 1952, was convicted for exposing to sale at his place of business in Pittsburgh, potatoes marked "U. S. No. 1", which failed to grade U. S. No. 1 by an average of 15 percent defective, in violation of section 4, subsec. A of Act No. 191 of the General Assembly of the Commonwealth of Pennsylvania of May 21, 1943, P. L. 412, 31 PS §§371, 378) ; and fined the sum of $100 and costs. Defendant paid the fine and took this appeal.

At the hearing de novo before this court the Commonwealth rested its case on the testimony of Robert G. Martin, inspector of fruits and vegetables of this Commonwealth's Department of Agriculture. Mr. Martin testified that on January 23, 1952, as an agent of the department, he entered the place of business of defendant on Penn Avenue, Pittsburgh, and found on the right hand side of the building, 36 15-pound closed bags of potatoes marked "Maine Potatoes U. S. No. 1". There was no identification on these bags as to the name and address of the person who had labeled them. After being appraised of this fact, defendant wrote the name of "Zeidenstein Brothers" on the bags.

On inspection these bags failed to grade U. S. No. 1 as marked. The inspector explained that a six percent tolerance is allowed, but the defects in the potatoes in these bags, five of which were used as samples, ranged from 8 to 23 percent, or an average of 15 percent tolerance.

Defendant testified that he is engaged in the wholesale produce business. The potatoes had been shipped from the State of Maine in freight cars, as U. S. No. 1, size "A"; that when the freight cars arrived at the Terminal Market in Pittsburgh, some of the bags were

broken. He claimed he was in the act of repacking these broken bags in his warehouse when the inspector entered the storeroom on the first floor, off the ground floor. He further alleged that this room where the inspector found the potatoes is used in part for repacking and selling, and that it was his duty to repack the bags; that moreover, this merchandise was not salable until he had discussed it with his brothers who were in partnership with him as to how the potatoes in the bags, which had been taken from the broken bags, would be graded. He admitted the bags were marked "U. S. No. 1" but explained that he intended, after talking with his brothers, to mark these bags "Potatoes, U. S. Commercials".

Defendant now seeks to set aside the conviction of the magistrate for the following reasons: (1) That the potatoes in the closed bags were not in fact exposed to sale, but even if they were, the Commonwealth did not submit proof sufficient to establish any exposure to sale; (2) that the title of the act is misleading, and so the act is subject to the infirmity of being in contravention of article III, sec. 3 of the Constitution of the Commonwealth of Pennsylvania, and (3) that the title of the act limits the application of the act to potatoes other than those packed or repacked within the Commonwealth of Pennsylvania; therefore, no conviction could be had in the instant case for it is admitted by the Commonwealth that the potatoes in question were being repacked in Pennsylvania.

As to the first point argued by defendant, the evidence indicated that the store of the defendant was not entirely a warehouse, but was used for the general purpose of receiving and selling perishable fruits and vegetables, as well as storing the same for short spaces of time.

Defendant's counsel indicates that since the enforcement provisions of the Act of May 21, 1943, P. L. 412,

vests "in the State Department of Agriculture, and its officers, employees and agents" the right "to enter upon the premises of any person within this State for the purpose of purchasing packages of . . . potatoes . . . and securing evidence of violation of this Act"; the Commonwealth cannot make out a case unless a sale or transportation for sale is shown by the testimony. Defendant's argument then comes to the point where he must claim that the Commonwealth, in order to prove an exposure to sale, must prove an actual sale or transportation for sale.

This contention fails for two fundamental reasons. First, the statute itself does not limit the State's agents to merely going around from store to store purchasing potatoes for evidence. The statute gives them not only the power to purchase potatoes but also secure "evidence of violations". The Commonwealth's agent has the right to enter "for the purpose of purchasing packages of . . . potatoes . . . *and* securing evidence of violation of this act". (Italics supplied.) Secondly, judicial construction clearly shows that to prove an illegal exposure to sale, the State is not limited to the proof of an illegal sale itself. Whether an article is exposed for sale or not is a question of fact, to be determined from all the circumstances in the case. Defendant cites Adams Express v. Schlessinger, 75 Pa. 246, 256, wherein the learned court defined "expose to sale" as follows:

"The fair meaning of 'expose' in this statute[1] obviously is 'to exhibit', 'to bring into view', 'display', to 'point out or show to the bystanders' ".

Defendant both exhibited these closed bags of potatoes in his store, and he displayed them. His explana-

---

1. The statute referred to had reference to the right of sale of goods, wares, merchandise or other property by commissioned merchants, factors, common carrier or other person holding said property by virtue of liens due to failure of the owners of the property to pay proper charges for transportation.

tion that the bags were to be subsequently remarked was not convincing.

Defendant also contends that no conviction can be had since the title to the act indicates only potatoes "other than those packed or repacked within this State", for the Commonwealth admits the potatoes in question were repacked at defendant's place of business in the City of Pittsburgh. He bases his claim upon two basic principles of law; first, the statute involved is penal in character and must be strictly construed, albeit, with common sense: Commonwealth v. Gill, 166 Pa. Superior Ct. 223, 229; Commonwealth ex rel. Dugan v. Ashe, 342 Pa. 77, 80. In the discussion hereinafter to follow we will bear in mind this cardinal principle of interpretation. Secondly, the title of an act not only limits its scope, but a misleading title subjects the act to constitutional barriers. These are correct statements of the law and will be given great consideration.

However, it is doubtful if defendant has the proper standing to raise this question. His attack upon the title revolves around the concepts of "packing and repacking"; but, he was not convicted of either packing or repacking these potatoes originally packed in Maine and repacked in Pennsylvania. He was convicted of "exposing to sale" defective potatoes. It is difficult to see how defendant, having been convicted of illegally grading potatoes for sale—this being the heart of the act—can raise the question of any inconsistency in the title relating to something else, to wit, the packing or repacking of potatoes outside the Commonwealth of Pennsylvania. This is especially so since these potatoes satisfy this requirement, having been packed originally in Maine.

Nevertheless, assuming that defendant does have the requisite standing to raise questions of inconsistency in the title of the act, and also assuming for the pres-

ent, at least, that the portion of the act which defendant has seized upon and called the title is actually the title, we proceed to the merits of his claim. Defendant's argument that the title limits the scope of the act, although it is a correct statement of the law, must be viewed in light of the following background in order to determine whether or not this contention is barred by constitutional barriers.

Article III, sec. 3, of the Constitution of Pennsylvania provides as follows:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

A succinct interpretation of this provision is set forth in Schireson v. Shafer et al., 354 Pa. 458, 461, as follows:

"It is clear that a title which mentions that the act is amendatory, recites the particular prior acts it is designed to amend and further specifies the sections of the prior acts involved, puts a person of a reasonably inquiring state of mind on notice of the subject matter of the act and the *reader to further inquiry.* That is all that is required by Article III, section 3 of the Constitution." (Italics supplied.)

In applying the test laid down in Schireson v. Shafer, supra, we find that that part of the act defendant described as its title mentions the language "to further re-enact and amend the title" so that defendant, if he were relying upon the title, should have known that the matter we are dealing with was an amendatory statute. Reasonable inquiry would have focused his attention upon the general subject matter of the act. Having been led into the act, as required in Commonwealth v. Firemen's Fund Insurance Company, 369 Pa. 560, he would have discerned that there was no substantive matter entirely disconnected from the main legislation included within the folds of the

bill: Commonwealth v. American Gas Company, 352 Pa. 113, 118. A reasonably inquiring mind would conclude that the "grading and sale of potatoes" is the mischief the legislature sought to remedy. In this instance it would make no serious difference where the potatoes were packed or repacked.

Defendant's claim, however, does not rest solely upon the sweeping interdiction of article III, sec. 3, supra. He contends that on the level of interpretation, judicial decision and the Statutory Construction Act require more rigorous tests. We do not quibble on this point. Our learned appellate courts have laid down the rule that the title of an act limits its scope. The Pennsylvania Railroad Co. v. Riblet, 66 Pa. 164; Wilkes-Barre et al. v. Pennsylvania Public Utility Commission, 164 Pa. Superior Ct. 210, 215. However, we believe the ultimate question is not whether the act goes beyond the scope of its title, but rather revolves around the interpretation of the act in the light of legislative intent.

"Titles to acts may be considered in their construction. Statutory Construction Act . . . sec. 54, 46 PS §554": Wilkes-Barre et al. v. Pennsylvania Public Utility Commission, supra, p. 215.

Our review of the Statutory Construction Act reveals certain well known presumptions, which we must use as tools to aid us in ascertaining legislative intent. The relevant ones are as follows:

1. The legislature does not intend a result that is absurd, impossible of execution or unreasonable.

2. The legislature intends the entire statute to be effective and certain.

3. The legislature does not intend to violate the Constitution of the United States or of this Commonwealth.

Judicial decisions are in complete accord with these statements: Pooler v. Grasselli Chemical Company, 150 Pa. Superior Ct. 595; Commonwealth v. Peoples

et al., 345 Pa. 576. This is extremely important. Should we hold that the act sought to control the packing or repacking of potatoes outside of this Commonwealth, our decision would be absurd, unreasonable and impossible of enforcement. This Commonwealth cannot pass an act dealing with the packing or repacking of potatoes outside of its sovereign limits. It can, however, control the grading and sale of potatoes within its limits.

The Pennsylvania Statutory Construction Act, supra, further provides as follows:

"The title and preamble of a law may be considered in the construction thereof. Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a law shall be construed to exclude all others. The headings prefixed to chapters, articles, sections and other divisions of a law shall not be considered to control but may be used to aid in the construction thereof."

In interpreting the above section of the Statutory Construction Act, the courts have held that the title of a statute may be considered in the construction thereof: Hoffman et al. v. City of Pittsburgh et al., 365 Pa. 386, and that all provisions in the act must be read in light of their immediate context, particularly in the case of provisos: Whitaker Borough Commission v. Pennsylvania Public Utility Commission, 163 Pa. Superior Ct. 238. However, the title to an act cannot give vitality to a subject omitted from the body of an act, *nor control the plain meaning of the language thereof.*

In State Highway Route No. 72, 265 Pa. 369, 374-75, it was held:

"The liability is imposed by the enacting clause, not by the title; while the latter is regarded as a part of the statute and may properly be considered in its con-

struction . . .; yet the title cannot give vitality to a subject omitted from the body of the act; for while a statute cannot be broader than its title, the title may be broader than the statute; if so, the latter must control; . . . the act may be valid although its title is broader than the act itself."

In the instant case the title is broader than the act, giving the casual impression that the act covers packing or repacking of potatoes anywhere in the entire world. It should be further noted in this connection that the title of the Act of March 28, 1929, P. L. 86, as reënacted and amended by the Act of May 28, 1937, P. L. 1005, are both limited to grading and sale of certain commodities in this Commonwealth, and that the Act of May 21, 1943, P. L. 412, which we are now considering, is the only act of this series in which the title has the phrase "other than those packed or repacked within this State". On this point we are guided by the following from the opinion of the Supreme Court in American Surety Company's case, 319 Pa. 549, 553, as follows:

"Where the enacting clause of a statute is clear and unambiguous, the preamble or the title will not be permitted to contradict that clear intention as evidenced by the enacting clause (Com. ex rel. v. Alliance Petroleum & Coal Co., 53 Pa. 71, 73)."

Here, this test is met. The enacting clause is clear and unambiguous. It covers the "grading and sale of potatoes in this State" and provides penalties for violations.

We have answered defendant's argument based upon what he considers to be the title of the act. However, we believe that that segment which defendant relies upon is not a part of the title, for the following reasons: The language which precedes the enacting clause of the Act of May 21, 1943, P. L. 412, states:

"To further re-enact and amend the title and the act, approved the twenty-eighth day of March, one thousand nine hundred and twenty-nine (Pamphlet Laws, eighty-six), entitled, as amended 'An act relating to the grading and sale of grapes and potatoes in this Commonwealth; providing penalties for violations; and imposing certain duties upon the Department of Agriculture,' by extending the provisions to apples and peaches, and permitting the grading, classifying and packing of grapes, potatoes, apples and peaches, other than those packed or repacked within this State.

"The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

"Section 1. The title and the act, approved the twenty-eighth day of March, one thousand nine hundred and twenty-nine (Pamphlet Laws, eighty-six), entitled, as amended 'An act relating to the grading and sale of grapes and potatoes in this Commonwealth; providing penalties for violations; and imposing certain duties upon the Department of Agriculture,' as re-enacted and amended by the act, approved the twenty-eighth day of May, one thousand nine hundred and thirty-seven (Pamphlet Laws, one thousand five), is hereby further re-enacted and amended to read as follows:

## "An Act

"Relating to the grading and sale of grapes, (and) potatoes, apples and peaches in this Commonwealth; providing penalties for violations; and imposing certain duties upon the Department of Agriculture."

Defendant appears to have proceeded on the assumption that the first paragraph of the prefatory material is the title of this act simply because of its position at the head of the act, as reprinted in the Laws of Pennsylvania. The fallacy of that assumption is made readily apparent by a reference to the material appear-

ing before the enacting clause in the printing of the Act of May 28, 1937, P. L. 1005[2]. It is to be observed that with respect to physical arrangement, the prefatory material of the 1937 Act and of this act is identical. Further, the first paragraph of such material in each act is similar in form. Accordingly, if defendant's reasoning were valid, the first paragraph of the 1937 Act would be the title of that act. Such is not the case. When the Legislature, in the first and second paragraphs of the present act, found it necessary to make reference to the title of the 1937 Act, that title was, on each occasion, stated to be:

"An act relating to the grading and sale of grapes, (and) potatoes in this Commonwealth; providing penalties for violations; and imposing certain duties upon the Department of Agriculture."

This language is taken from the *third* and not the first paragraph of the material which precedes the enacting clause of the Act of 1937, supra.

Defendant has elected to treat the first paragraph of the above material as the title of the Act of May 21, 1943, P. L. 412. From that premise it is argued

---

2. An Act to re-enact and amend the title and act, approved the twenty-eighth day of March, one thousand nine hundred and twenty-nine (Pamphlet Laws, eighty-six), entitled 'An act relating to the grading and sale of grapes in this Commonwealth, providing penalties for violations, and imposing certain duties upon the Department of Agriculture,' extending the provisions of said act to potatoes; and changing the penalties prescribed.·

"Section 1. Be it enacted, &c., That the title and act, approved the twenty-eighth day of March, one thousand nine hundred and twenty-nine (Pamphlet Laws, eighty-six), entitled 'An act relating to the grading and sale of grapes in this Commonwealth, providing penalties for violations, and imposing certain duties upon the Department of Agriculture,' are hereby re-enacted and amended to read as follows:

"An Act

"Relating to the grading and sale of grapes and potatoes in this Commonwealth; providing penalties for·violations; and imposing certain duties upon the Department of Agriculture."

that the "title" limits the operation of the statute to grapes, potatoes, apples and peaches outside the State of Pennsylvania because it states that the provisions of the Act of March 28, 1929, as amended, are extended to permit the grading, classifying and packing of grapes, potatoes, apples and peaches "other than those packed or repacked within the State".

The difficulty with defendant's argument is that there is nothing to support his conclusion that the first paragraph of the material preceding the enacting clause was intended by the legislature to serve as the title of the act under consideration. The act is set forth in 31 PS §371, et seq., and there the title is stated to be:

"An Act relating to the grading and sale of grapes, potatoes, apples and peaches in this Commonwealth; providing penalties for violations; and imposing certain duties upon the Department of Agriculture."

An examination of the language preceding the enacting clause leads inexorably to the conclusion that Purdon's editorial staff and not defendant has correctly stated the title of this statute.

The second paragraph of the prefatory material states, inter alia:

"The *title* and the act . . . approved the twenty-eighth day of March, one thousand nine hundred and twenty-nine . . . as re-enacted and amended by the act, approved the twenty-eighth day of May, one thousand nine hundred and thirty-seven . . . *is hereby further re-enacted and amended to read as follows* . . . " (Italics supplied.)

Thus, the legislature has by clear and explicit language, designated the third paragraph to be the title of this act.

This appeal must then be dismissed for the following reasons:

1. The Commonwealth submitted sufficient evidence for this court to find an illegal exposure to sale.

2. Defendant, having been convicted of illegally exposing potatoes to sale, does not have the proper standing to raise any question concerning any inconsistency as between the title and the body of the act which refers to packing and repacking potatoes.

3. The section of the act which defendant claims is the title, is not misleading to the reasonably inquiring mind.

4. The segment of the act which defendant calls the title cannot limit the scope of the act, since it is broader in scope than the act itself.

5. We disagree with defendant's choice of a title for the act, and consider the third paragraph of the act as its title. There are no inconsistencies whatsoever in this segment of the act.

We admit this statute was shoddily drawn up, but we leave it to the legislature to cure these slight technical deficiencies.

