Commonwealth, Appellant, v. Hallberg.

Argued January 14, 1953; reargued May 25, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

Appeal, No. 15,

*Randolph C. Ryder,* Deputy Attorney General, with him *Frank A. Orban,* District Attorney, and *Robert E. Woodside,* Attorney General, for appellant.

*Daniel J. Snyder, Jr.,* with him *Kunkle & Trescher, Joseph N. Cascio, Clarence L. Shaver, Shaver & Heckman* and *Fike & Cascio,* for appellee.

*S. Edward Hannestad,* for Legislative Reference Bureau, amicus curiae.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, June 26, 1953:

Roy W. Hallberg was arrested on an information charging him with violation of section 905 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, in that he allegedly operated over a state highway route in Somerset County a motor vehicle which was in excess of the maximum width permitted by law without having obtained a permit authorizing such operation. A hearing was had before a Justice of the Peace as the result of which judgment was entered for the Commonwealth and a penalty of $50.00 and costs, or an alternative sentence of ten days in the county jail, was imposed. Hallberg appealed to the Court of Quarter Sessions of Somerset County, where a hearing was had de novo. The defendant demurred to the evidence and moved to quash the information; the court granted this motion. The Commonwealth appealed to the Superior Court, which affirmed the order of the court below. We thereupon allowed this appeal.

The question involved turns entirely upon the effect to be given to section 1 of the Act of June 5, 1937, P. L. 1718, amending section 905 of The Vehicle Code. Section 905, before amendment, contained a subsection, (a), which provided that the Secretary of Highways and local authorities in their respective jurisdictions might, under certain circumstances, issue a special permit authorizing the applicant therefor to operate a vehicle of a size and weight exceeding the maximum specified in the act. It also contained a subsection, (b), which provided that in the event of a catastrophe or accident affecting the public safety or convenience such a permit might be issued subsequent to the operation or movement of the vehicle. It further contained a paragraph entitled "Penalty," which provided that any person operating a vehicle of a size or weight ex-

ceeding the maximum specified in the act, without first having obtained a permit so to do, should, upon summary conviction before a magistrate, be sentenced to pay a fine of $50.00 and costs, and, in default of the payment thereof, should undergo imprisonment for not more than ten days.

An Act of June 22, 1931, P. L. 751, had amended section 905 in respects here immaterial, but it continued subsection (b) and the penalty paragraph unchanged.

An Act of July 16, 1935, P. L. 1056, had purported to amend only subsection (a) of section 905; accordingly subsection (b) and the penalty paragraph were not set forth in that amendatory act.

Then came the Act of June 5, 1937, P. L. 1718, here in question. It purported to amend section 905; it did add a provision to subsection (a), but it did not set forth subsection (b) and the penalty paragraph at all.

Defendant contends that the failure to include the penalty paragraph in the 1937 Act amounted to an abrogation thereof from The Vehicle Code. To support this contention he points to Article 3, §6, of the Constitution, which provides that "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, *but so much thereof as is* revived, *amended,* extended or conferred shall be re-enacted *and published at length,"* and to section 81 of the Statutory Construction Act of May 28, 1937, P. L. 1019, which provides that "Whenever a law re-enacts a former law, the provisions . . . only of the former law as are omitted from the re-enactment shall be deemed abrogated, . . ." In our opinion neither of these provisions justifies the reliance placed thereon by defendant. On the contrary, the constitutional provision requires that *so much of the law as is amended shall be published at length*; in the present instance the announced purpose was to amend the entire section

905, not only subsection (a). If it had really been intended to eliminate subsection (b) and the penalty clause such elimination constituted in itself an amendment of the section, and therefore not only subsection (a) but also subsection (b) and the penalty clause, in short, the entire section 905, had to be published at length if the constitutional mandate was to be observed. As far as section 81 of the Statutory Construction Act is concerned, it relates to a re-enactment of a former law, and in a re-enactment provides that such provisions only of the former law as are omitted from the re-enactment should be deemed abrogated. But the real question is how such "omission" is to be indicated. The answer to that question in the case of amendatory laws is to be found in section 71 of the Statutory Construction Act which, implementing the Constitution, provides that "The Secretary of the Commonwealth shall, in printing amendatory laws, cause to be printed the section or part of the law only as re-enacted.[1] In the section or part of the law re-enacted, the secretary shall cause to be printed between brackets, the words, phrases, or provisions of the existing law, if any, which have been stricken out or eliminated by the adoption of the amendment, and he shall cause to be printed in italics all new words, phrases or provisions, if any, which have been inserted into or added to the law by the passage of such amendment."[2]

---

[1] This provision was obviously aimed to change the previous practice of printing the existing law in addition to the law as amended.

[2] House Rule 20 is exactly to the same effect as section 71 of the Statutory Construction Act as well as the Act of March 16, 1923, P. L. 11, which the Statutory Construction Act repealed and superseded. The Act of 1923 expressly referred to the constitutional provision, and the purpose of its enactment was to carry out the mandate of that provision.

It would seem entirely clear from this provision that, where the legislature intends to eliminate any section or part of a law, it is not enough merely to delete the publication of that section or part, but the entire section or part, including the section or part to be eliminated, must be published at length, with the section or part to be eliminated enclosed in brackets. If the purpose is declared merely to amend a *subsection,* as in the amendatory Act of July 16, 1935, P. L. 1056, it is sufficient to re-enact and publish at length only that subsection; all other parts of the section would then remain unaffected. If, on the other hand, the declared purpose is to amend a *section,* as in the amendatory act of June 5, 1937, P. L. 1718, the entire section must be re-enacted and published at length, including any subsection or part which it is intended to abrogate, which subsection or part must be placed between brackets; in other words, the intended abrogation must be affirmatively disclosed. The object of the Constitutional provision and of section 71 of the Statutory Construction Act is obvious, namely, to enable both the legislators themselves and all persons interested in the legislation to see exactly the changes made between the existing law and the re-enactment, without the necessity of referring to the former for comparison (*Commonwealth v. Cooper,* 277 Pa. 554, 560, 121 A. 502, 505; *Wilkes-Barre v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 210, 216, 63 A. 2d 452, 455, 456), whereas, if the portion to be abrogated were simply deleted, it would be impossible to determine whether such deletion represented an actual legislative intention to abrogate such part of the law or was due to a mere error or oversight in the publication of the amendatory legislation. We are strengthened in this conclusion by the well-known, uniform practice, long existent, of legislative draftsmen

thus to place in brackets all parts of an existing law intended to be abrogated, as well as by the general understanding that such abrogation is to be deemed to occur only when so indicated. Incidentally, it is interesting to note that in the subsequent Act of August 24, 1951, P. L. 1368, section 27, which again amended section 905 of the Vehicle Code, subsection (b) and the penalty clause are set forth as they were prior to the 1937 amendment, but (except for an interpolated provision in the penalty clause) *not in italics,* indicating that the legislature was clearly of the opinion that subsection (b) and the penalty clause were not thereby being *reintroduced* into the legislation but *had never been abrogated.*

We are of opinion, therefore, that the attempted amendment of section 905 by the Act of June 5, 1937, P. L. 1718, is invalid because of its failure to comply with the constitutional and statutory requirements, and therefore that the entire section remained in force as it existed prior to that act.

The judgment of the Superior Court affirming the quashing of the information against the defendant is reversed, and the record is remanded to the Court of Quarter Sessions of Somerset County for further proceedings.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

How the majority opinion reaches its conclusion in the light of the Constitution and of §81 of the Statutory Construction Act of 1937, and without overruling prior decisions of this Court is to me absolutely incomprehensible.

The majority opinion has not one but three insurmountable hurdles to jump—the Constitution, and §81 of the Statutory Construction Act, and the prior deci-

sions of this Court. A careful analysis of the majority opinion will show (1) that its interpretation makes §6 of Article III of the Constitution meaningless; (2) that it is directly contrary (a) to the prior decisions of this Court and (b) to the legislative practice which existed for 75 years of re-enacting at length the law as it was intended to be in, by and after the amendment; (3) that the case is directly ruled by §81 of the Act; and (4) that §71 of the Act which is merely a directive to a printer as to how an act shall be published, is not in conflict with §81 and does not sustain the majority's interpretation of the Constitution or of the Statutory Construction Act.

The Constitution of Pennsylvania, Art. III, §6* is clear and it has up to now been consistently construed to require that that part of the law which the legislature intends in and by an amendment to be thereafter the law, shall be restated (or re-enacted and published) in full: *Com. v. Cooper,* 277 Pa. 554, 121 A. 502; *Wilson v. Downing,* 4 Pa. Superior Ct. 487; *Titusville Iron Works v. Keystone Oil Co.,* 122 Pa. 627, 15 A. 917; *Com. v. Pennsylvania R. R. Co.,* 88 Pa. Superior Ct. 321; *U. S. Steel v. Allegheny County,* 369 Pa. 423, 435, 86 A. 2d 838. It does not require the useless recital of the old law but merely a recital or statement of the new law, i.e., the law as changed, in full.

In *Com. v. Cooper,* 277 Pa., supra, this Court said (page 559-560) : "Perhaps petitioner was misled to the remarkable conclusions stated, by reason of the fact that not unusually an amendatory act quotes verbatim

---

* "No law shall be . . . amended, or the provisions thereof extended . . ., by reference to its title only, but *so much thereof\*\** as is . . . amended, extended . . . shall be re-enacted and published at length."

\*\* Italics throughout, ours.

the existing statute, *and then sets forth at length what it is to be after amendment.* The Constitution does not require such a quotation, however, and the present legislature has wisely recognized this,—so far as concerns the printing of the pamphlet laws,—by the Act of March 16, 1923, . . . and has thus done away with a practice not compelled by the Constitution, and which was of no use whatever, except perhaps as a means by which the legislators, during the consideration of a proposed amendment, might quickly ascertain its intended purpose.

"The words 'only' and 'so. much' in Article III, section 6, of the Constitution, necessarily carry with them the idea that a later statute will be valid. although the amendment is made 'by reference to [the] title' of the act to be amended, *if also 'so much' of it 'as is revived, amended,* extended or conferred *shall be reenacted and published at length'.* Barrett's App., 116 Pa. 487, sometimes cited as deciding differently, has no such effect. There it was attempted to amend a statute, *without either quoting it or reenacting it as it was to be when amended,* although the purpose was simply to add to the original statute, every part of which was intended to continue in force.

*"The true position* is as stated in Wilson v. Downing, 4 Pa. Superior Ct. 487, 493, where, after citing a similar provision of the Constitution of Ohio, it quotes with approval the following extract from the opinion in Lehman v. McBride, 15 Ohio 573, 602-3: ' "As we understand this clause of the Constitution, it requires, in the case of an amendment of a section or sections of a prior statute, that the *new act shall contain,* not the section or sections which it proposes to amend, but the *section* or sections *in full as it purports to amend them. That is, it requires, not a recital of the old section, but a full statement, in terms, of the new one . . . ."* ' "

Could anything be clearer or more reasonable or sounder! If the majority's construction of this Article of the Constitution is correct, namely, that the old section instead of the new section had to be restated and published in full, the Constitutional mandate would be meaningless and the intent of the legislature would be left absolutely ambiguous and completely obscure until some legislative act interpreted it. Before 1923 there was no legislative act to interpret it; and under our view and the prior decisions of this Court, no act was necessary since a statement of the new law in full clearly manifested the legislative intent.

Parenthetically, §71 of the Statutory Construction Act of 1937 (which republished a similar section in an act of 1923) could not change the Constitution of Pennsylvania even if that had been its purpose, but as we shall later demonstrate, it made no attempt to do so.

What then was the settled construction of Article III, §6 of the Constitution prior to 1923? *Com. v. Cooper* answers that question—the constitutional mandate *requires not a recital of the old* section *but a full statement of the new one.* This is so reasonable and sound that it is difficult to understand how anyone could question it. Again in *Wilson v. Downing,* 4 Pa. Superior Ct., supra, an amendatory act was sustained and the Court in discussing Article III, §6 of the Constitution said: "What is meant by these words is, that all statutes shall be self-explanatory and complete in their provisions, Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627, and this act comes up to that requirement. . . . '. . . this clause of the constitution, . . . requires, in the case of an amendment of a section or sections of a prior statute, that *the new Act shall contain, not the section* or sections, *which it proposes to amend, but the section or sections in full as it purports to amend them.* That is, it requires, not a recital of

the old section, but a full statement, in terms, of the new one . . . .' "

In *Titusville Iron Works v. Keystone Oil Co.,* this Court said (p. 634) : ". . . the Constitution of 1874, section 6, of article III., . . . requires all statutes to be self-explanatory and complete in their provisions, . . . ."

Nevertheless, in direct conflict with *Com. v. Cooper* and with the aforesaid opinions and decisions of this Court, the majority opinion establishes a new rule, a new construction of the Constitution when it says "If it had really been intended to eliminate subsection (b) and the penalty clause . . . *the entire* [*old*] *section 905,* had to be published at length if the constitutional mandate was to be observed." This is so unreasonable that with due deference it seems to be in the language of the Statutory Construction Act, absurd. This construction of Article III, §6, was flatly rejected by this Court as recently as 1951 in *U. S. Steel Co. v. Allegheny County,* 369 Pa., supra. In that case the County contended that the amendment of July 15, 1935 which restated verbatim and reenacted and republished §518 of an earlier act and then added an additional provision thereto, merely restated and republished the original §518 *for the sole purpose of complying with* Article III, §6 of the Pennsylvania Constitution. This Court in its opinion on this point said (p. 435) : "We disagree with appellant's ingenious but specious interpretation. We are convinced that the original Section 518 was restated verbatim in accordance with the requirements of Article III, §6 of the Constitution *for the purpose and with the legislative intent to re-enact the original section with a new provision added."*

In other words, the constitutional mandate requires not a restatement of the old section which would be unnecessary and, without further explanation, would only create ambiguity, confusion and chaos; *it requires*

*a statement or recital of the new section* (which the legislature wants to be the law) *in full.* If the majority position is sound, namely, that if the legislature intended to eliminate the penalty clause, then it had to restate and publish the old section at length, how could anyone tell—at least prior to 1923—what it intended to abrogate and what it intended to still be the law? If the majority position on this point is sound, how is it that they cannot refer to any legislative act or practice or to any prior decision of this Court which authorized or approved it?

If the majority opinion on this point is correct, then the constitutional mandate and especially the words "so much thereof" are, we repeat, meaningless, and the decision in *Com. v. Cooper,* and in all the other cases hereinabove cited which are diametrically opposed to the majority opinion were wrong and all these cases must be overruled.

Let's look a little further and see some of the results which necessarily flow from the constitutional interpretation now adopted by the majority. If the legislature intended to amend a section which contained 20 subsections by altering the first subsection and eliminating the last subsection, and if pursuant thereto it published the first subsection as changed and then restated verbatim the next 18 unaltered subsections, but intentionally *omitted* the last or 20th subsection, the majority opinion would hold that the entire section as thus amended was not published in full (either before or after the Act of 1923) and therefore the entire amendatory act, with all its 19 complete subsections which were published at length, was unconstitutional and void. Even if this were not contrary to all the prior decisions of this Court, how can anyone say that such a construction is reasonable or sound?

We shall now discuss in more detail several additional reasons why the Act of 1937 *as enacted* complies with the constitutional requirements and that the penalty provision has been abrogated* by virtue of the Constitution and by virtue of §81 of the Statutory Construction Act.

If the legislature wished and intended to continue the penalty provision in §905 they could easily have done so either (1) by amending *sub*section 905a as they did in the Act of 1935, in which event the new *sub*section 905a would be published in full and the penalty provision would have remained the law without restating or republishing it; or (2) by amending §905 and restating or repeating *in full* the section as amended, *including the unaltered penalty provision,* just as they did when they amended §906 in this same amendment of 1937, and just as they did when they amended §905 in the Act of June 22, 1931, P. L. 751.

If on the other hand the legislature wished to abrogate the penalty provision in §905 they could have validly and constitutionally done so in a number of ways: (1) by restating or reenacting and publishing at length the section or new law as they desired it thereafter to be, omitting the penalty clause; or (2) they could republish the entire section and place the penalty provision in brackets; or (3) they could have expressly repealed the penalty clause; or (4) they could repeal the penalty clause by implication.**

---

* Since §903 imposed a $50. penalty for overweight, the legislature evidently decided it was unfair to impose an addtional $50. penalty for failure to obtain a special permit (§905 as amended) to transport an overweight load.

** We note further that irrespective of the intention of the legislature, an entire amendatory act might be declared unconstitutional by this Court because the title was defective or because the act was too vague and uncertain, or conflicting and incon-

The first method is exactly what the legislature adopted in the instant case and, we repeat, it is in accord with the Constitution and with this Court's interpretation of the Constitution for the entire 75 years of is existence. In addition to this, the title of the amendatory act of 1937 is a further confirmation of our construction. It reads: "To amend the act, approved the first day of May, one thousand nine hundred and twenty-nine, . . . entitled 'An act for the protection of the public safety; . . .' as amended, . . .; and changing and imposing penalties. Section 1. Be it enacted, &c., That sections nine hundred and five and nine hundred and six . . . are hereby further amended to read as follows: Section 905. . . ." The legislature not only stated in the title that it was going to change the penalties, but also specifically stated that the act was further amended *"to read as follows"*, thereby clearly showing their intention that the law was thereafter to be what was fully set forth and published in the ensuing §905. All of this the majority opinion ignores.

It follows as day follows night that the part of the section or law which the legislature did not reenact and publish, i.e., left out or omitted, is no longer the law. Moreover, our construction is likewise in accord with—while the majority opinion is directly in the teeth of—§81 of the Statutory Construction Act which complements Article III, §6 of the Constitution and clearly applies to and specifically rules the present case. It provides: "Whenever a law re-enacts a former law, the provisions common to both laws shall date

sistent, or because of any other constitutional impairment. (See *Willcox v. Penn Mutual Life Ins. Co.*, 357 Pa. 581, 55 A. 2d 521; *Com. v. DePofi*, 362 Pa. 229, 66 A. 2d 649; *Miller v. Belmont Packing & Rubber Co.*, 268 Pa. 51, 110 A. 802; *Com. v. Fireman's Fund Ins. Co.*, 369 Pa. 560, 87 A. 2d 255; *U. S. Steel Co. v. Allegheny County*, 369 Pa., supra.)

from their first adoption. *Such provisions* only of the former law *as are omitted* from the re-enactment *shall be deemed abrogated,* and only the new or changed provisions shall be deemed to be the law from the effective date of the re-enactment." Could language be any clearer? Subsection (b) and the penalty clause having been omitted by the legislature from the reenactment are clearly and unquestionably abrogated.

Contrary to the majority opinion, the word "omit" —unless otherwise defined—has been, up to now, so clearly understood by laymen and Courts alike as to need no definition; if, however, a definition is desired, it means to "leave out", or "unmention", or "to abstain from inserting . . .": Webster's New Collegiate Dictionary. The legislature accordingly left out what they wanted to omit and published the act in full as they wanted it to be from the date of the amendment, thus complying with both the Constitution and §81. But the majority opinion ignores the clear and universally accepted meaning of the word "omit" and distorts it to mean "to bracket"; and since the "printer" or his employee did not restate the penalty clause and place it in brackets, the majority opinion holds it was not omitted and the entire amendment falls.

The fallacy of the majority opinion which is based almost entirely upon §71 of the Statutory Construction Act, is apparent from the language of that section itself. The section is a direction to the Secretary of the Commonwealth as to how amendatory acts shall be printed and published. Parenthetically, we reiterate: How is it possible to place such a section above the Constitution of Pennsylvania, or even above §81? Section 71 provides as follows: "Printing and Interpretation of Amendatory Laws.—The Secretary of the Commonwealth shall, in printing amendatory laws, cause to be printed the section or part of the law only as re-enacted.

In the section or part of the law re-enacted, the secretary shall cause to be printed between brackets, the words, phrases, or provisions of the existing law, if any, which have been stricken out or eliminated by the adoption of the amendment, and he shall cause to be printed in italics all new words, phrases or provisions, if any, which have been inserted into or added to the law by the passage of such amendment.

"*In ascertaining the correct* reading, status and *interpretation of an amendatory law,* the matter inserted within brackets shall be *omitted,* and the matter in italics shall be read and interpreted as part of the law."

A careful analysis of §71 demonstrates (a) that it is a directive to a printer as to how an act shall be published, and (b) further demonstrates by its own language that it is not contradictory to, but may be harmonized with, §81. While it directs the Secretary to cause to be printed between brackets provisions of the existing laws which have been eliminated by the adoption of the amendment, it adds pertinently and importantly: "In ascertaining the correct . . . interpretation of an amendatory law, the matter within brackets shall be *omitted,* . . .". In other words, the part or subsection which the legislature omitted should be published by the printer in brackets; but as far as interpreting the act is concerned, the bracketed part should be considered as if omitted, *thus reaching exactly the same result as occurs under §81 which provides that what is omitted is to be considered as abrogated.*

It clearly follows that the unintentional or intentional lack of compliance with §71 by an employee of the office of the Secretary of the Commonwealth or of the printer could not possibly alter the legal effect or interpretation of the legislative act under the Constitution or under §81 or even because of the mechanical directions of §71.

Moreover, when we search even deeper to discover the legislative intent, we must recall (1) that this Court has repeatedly said that it is not what we think the legislature might have meant or should have said, but what is the meaning of the language they used (in the light of the objective sought to be attained: See §51 of the Statutory Construction Act); and (2) that in ascertaining the legislative intention (a) it is presumed that *it intends the entire statute to be effective;* and (b) *does not intend to violate the Constitution;* or (c) *intend a result that is unreasonable or absurd* (§52 Statutory Construction Act). Haven't these provisions been completely overlooked by the majority!

It is crystal clear (1) that §905 as amended and published at length as the legislature desired and intended it to be, is unquestionably valid and constitutional; and (2) that the penalty provision which was omitted by the legislature from the recital or statement of the new law was without any doubt abrogated!

For each and all of these reasons, I would affirm the unanimous decision of the Superior Court which in turn affirmed the decision of the Trial Judge and the Court en banc.

**Mr. Justice MUSMANNO** joins in this dissenting opinion.