# Stuart, Appellant, *v.* Gimbel Brothers, Inc., et al.

*Road law—Street—Easement in street—City plan—Eminent domain.*

1. An existing easement in a street is not affected by placing the street on a city plan, the easement can only be injured or destroyed by the exercise of the right of eminent domain.

*Eminent domain—Streets—Private use—Temporary taking.*

2. Private property cannot be taken for public use without authority of law and without just compensation being first made or secured; it cannot be taken for private use at all, except with the owner's consent.

3. These inhibitions do not refer to a permanent taking only, they apply to any taking, in which is included a temporary destruction or injury; an existing property right cannot be taken adversely, in whole or in part, without legal proceedings flowing from the exercise of the power of eminent domain, or otherwise, except under the police power in the case of a public emergency.

*Equity—Equitable remedies—Injunction—Discretion of chancellor—Comparative injuries—Irreparable injuries.*

4. Equitable remedies are administered in accordance with rules as certain as human wisdom can devise; only in doubtful cases is their application left to the discretion of a chancellor.

5. The principle that a chancellor will refuse to enjoin, when greater injury will result from granting than from refusing an injunction, has no application where the act complained of is, in itself as well as in its incidents, tortious.

6. There can be no balancing of the injuries which may arise from granting or refusing an injunction, where such balancing involves the preservation of or injury to an established right.

7. In equity, an injury is irreparable if the wrongs are of a repeated and continuing character, or occasion damages which are estimable only by conjecture, and not by any accurate standard.

8. Where plaintiff's right is secured to him by statute or contract, no question of irreparable damages arises; the question is one of right.

*Appeals—Preliminary injunction—Remitting for further proceedings—Decree.*

9. On an appeal from the refusal of a preliminary injunction, the record will be remitted for further proceedings in accordance with

the opinion of the appellate court, if sufficient does not appear to indicate definitely what the decree should be.

*Road law—Streets—Easement—Extent of easement—Equity.*

10. An ownership in fee of the bed of a street, subject to an easement of passage, extends from the heavens above to the centre of the earth beneath, and gives to such owner the right to make any use of the servient soil which does not interfere with the easement.

11. The owner of an easement of passage, resting in grant, cannot complain of any use of the space above or beneath the surface, which does not affect the rights defined by his deed.

12. On bill filed against the owner of the fee, before he has injured an easement of passage, the court should promptly and effectively prevent any injury to it.

13. If, before action by the court, an easement of passage has been wrongfully destroyed, a decree should be made requiring immediate restoration, without considering the cost thereof to the defendant.

14. If, however, under these circumstances, restoration can be made as quickly and effectively in such a way as to enable the defendant to exercise, at the same time, his rights, as owner of the fee subject to the easement, equity will adopt this course, leaving plaintiff to a recovery of damages, compensatory in any event, and punitive also, if the facts warrant it, for the injury he suffered from the time the harm was first done until final and complete restoration.

Argued November 27, 1925. Appeal, No. 411, Jan. T., 1925, by plaintiff, from decree of C. P. No. 1, Phila. Co., June T., 1925, No. 19410, refusing preliminary injunction in case of Edwin S. Stuart v. Gimbel Brothers, Inc., of Philadelphia, Ninth Ward Realty Co., Inc., and Thompson-Starrett Co., Inc. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Bill for injunction to restrain the impairment of a street abutting on plaintiff's property. Before BARTLETT, P. J.

The opinion of the Supreme Court states the facts.

Preliminary injunction refused. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

. *M. Hampton Todd,* for appellant.—The government cannot take the property of one citizen for the mere purpose of transferring it to another, even for a full compensation, where the public is not interested in such transfer: Lambertson & McClelland v. Hogan, 2 Pa. 22; Palairet's App., 67 Pa. 479; Phila. Clay Co. v. Clay Co., 241 Pa. 305; Poland Coal Co.'s Case, 58 Pa. Superior Ct. 312; McCabe v. Watts, 224 Pa. 253; Whiteman v. Gas Co., 139 Pa. 492; Taylor v. Sauer, 40 Pa. Superior Ct. 229.

Either as a public or private way it was the duty of the appellees in excavating for the cellars of the buildings to be constructed within their own property lines to give lateral support to the beds of the alleys and streets in question: Matulys v. Philadelphia & Reading Coal & Iron Co., 201 Pa. 70; Pollock v. R. R., 275 Pa. 467.

*Ralph B. Evans,* for appellees.—A preliminary mandatory injunction is never granted except where the plaintiff's rights are clear and the threatened injury is irreparable, or where the defendant has acted in bad faith with full knowledge of the plaintiff's rights, in an effort to accomplish his purpose, before injunctive relief can be obtained: Audenried v. R. R., 68 Pa. 370; Hicks v. Gas Co., 207 Pa. 570; Drum v. Dinkelacker, 262 Pa. 392; Hamilton v. Foster, 272 Pa. 95.

The injury or inconvenience suffered by plaintiff differs only in degree and not in kind from that of the public generally, and, therefore, plaintiff has no standing to ask for injunctive relief: Mint Realty Co. v. Wanamaker, 231 Pa. 277; Wishart v. R. R., 283 Pa. 100.

Ordinarily an injunction will not be granted where the injury to the plaintiff is not substantial and irreparable: Philadelphia's App., 78 Pa. 33; Elliott Nursery Co. v. Light Co., 281 Pa. 166.

OPINION BY MR. JUSTICE SIMPSON, January 4, 1926:

Plaintiff is the owner in fee of a property on the East side of Ninth Street in the City of Philadelphia, the deeds in his chain of title also conveying to him an easement in the three other streets hereinafter mentioned, with the right to build over a part of one of them, provided he leaves a clearance of fourteen feet. The street last referred to, runs along the north side of and extends to a point beyond plaintiff's property, connects at its easternmost end with another of said streets, paralleling Ninth Street, which in turn connects with the third street, running from Eighth Street to Ninth Street. Some years ago these three streets were placed on an unconfirmed city plan, but no attempt has ever been made to condemn plaintiff's interest in them.

Defendants own all the property abutting on the three streets, save that belonging to plaintiff. Being desirous of erecting a large department store, and to have the use of a portion of the space under and over the surface of the streets, one of the defendants obtained the passage of a city ordinance authorizing them "to construct and maintain [steel and concrete] basements or tunnels under and across" so much of said streets as does not abut on plaintiff's property, under the supervision of the Department of Public Works of the city, defendants agreeing to later restore and repave the surface of the streets at their own expense, "in accordance with the requirements and standard specifications of the Bureau of Highways."

Acting on the supposed authority of this ordinance, defendants, in the first week of September, 1925, fenced off the streets, except that part which immediately adjoins plaintiff's property, and excavated the soil for a depth of some thirty feet, thus preventing plaintiff from thereafter using them. He promptly protested; an attempted adjustment of the controversy failed, and the present bill in equity followed in due course. On the hearing of plaintiff's motion for a preliminary injunc-

tion, the court below refused it on three grounds: (1) Because defendants' use is only a temporary one, which, presumably, the court thought the city had the right to grant; (2) Because an injunction would cause defendants a greater injury than plaintiff would suffer by its refusal; and (3) Because plaintiff had an adequate remedy at law. This appeal is from that refusal, and, in our judgment, all of the above reasons fail when applied to the facts of this case.

If the city had condemned plaintiff's easement in the streets, it would have had the right to grant the privilege attempted to be given by the ordinance; but, as stated, there was no condemnation, the streets being simply placed on an unconfirmed city plan. Consequently plaintiff's right of property in the easement continued, and cannot rightfully be impaired, either with or without the authority of the city. Section 10 of the Bill of Rights of our State Constitution, provides that "private property [shall not] be taken or applied to public use, without authority of law and without just compensation being first made or secured," and for private use it cannot be taken at all, except with the owner's consent: Lambertson v. Hogan, 2 Pa. 22; Phila. Clay Co. v. York Clay Co., 241 Pa. 305; Penna. Mutual Life Ins. Co. v. Phila., 242 Pa. 47. This does not mean a permanent taking only, but any taking, in which, of course, is included a temporary destruction or injury; an existing property right cannot be taken adversely, in whole or in part, without legal proceedings flowing from the exercise of the power of eminent domain, or otherwise, save under the police power in the case of a public emergency.

The rule that an injunction will not be granted where it will result in a greater injury to defendant than its refusal will cause to plaintiff, is well settled, but has no relevancy to the instant case. In Walters v. McElroy, 151 Pa. 549, 557, it is said: "To extricate themselves from this difficulty the defendants say that the plaintiff's

land is of little worth, while they are engaged in a great mining industry which will be paralyzed if they shall be restrained from a continuance of the acts complained of, and that in equity a decree is of grace and not of right, and, invoking the principle that a chancellor will never enjoin an act when by so doing greater injury will result than from a refusal to enjoin, they ask that the plaintiff be turned over to his remedy at law. The phrase 'of grace' predicated of a decree in equity had its origin in an age when kings dispensed their royal favors by the hands of their chancellors, but, although it continues to be repeated occasionally, it has no rightful place in the jurisprudence of a free Commonwealth, and ought to be relegated to the age in which it was appropriate. It has been somewhere said that equity has its laws as law has its equity. This is but another form of saying that equitable remedies are administered in accordance with rules as certain as human wisdom can devise, leaving their application only in doubtful cases to the discretion, not the unmerited favor or grace of the chancellor. Certainly no chancellor in any English speaking country will at this day admit that he dispenses favors or refuses rightful demands, or deny that when a suitor has brought his cause clearly within the rules of equity jurisprudence, the relief he asks is demandable ex debito justitiæ, and needs not to be implored ex gratia. And as to the principle invoked, that a chancellor will refuse to enjoin when greater injury will result from granting than refusing an injunction, it is enough to observe that it has no application where the act complained of is in itself as well as in its incidents tortious. In such case it cannot be said that injury would result from an injunction, for no man can complain that he is injured by being prevented from doing to the hurt of another that which he has no right to do. Nor can it make the slightest difference that the plaintiff's property is insignificant in value to him as compared with the advantages that would accrue to the defendants from its occupation."

This principle was applied in Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, 555, where we said, "There can be no balancing of conveniences, when such balancing involves the preservation of an established right"; in Woelpper v. Penna. Water & Power Co., 250 Pa. 559, where the relief sought was an injunction against interference with a right of property; and in the cases cited in those three authorities and the others which follow in their train. These fully dispose of the question now being considered, and need no amplification.

It is of course true, as asserted by appellee, that "a preliminary mandatory injunction is never granted except when the plaintiff's rights are clear and the threatened injury is irreparable," but that is exactly this case. Plaintiff's rights depend solely on the construction of the deeds in his chain of title, and no doubt exists as to the interpretation of the language in them. "Irreparable" does not mean that an award in money would not be adequate, if plaintiff's right were to be measured in that way; for paying him the full value of his property would be at least an adequate recompense, if the courts could properly approve the injury upon defendants making such a payment. No court can rightfully do this, however, for it would result in a pro tanto taking of the property for a private use, and this, as we have shown, cannot be done. It was said in Commonwealth v. Pittsburgh & Connellsville R. R. Co., 24 Pa. 159, 160, quoted with approval in Phila. Ball Club, Ltd., v. Lajoie, 202 Pa. 210, 216, that "The argument that there is no 'irreparable damage,' would not be so often used by wrongdoers, if they would take the trouble to observe that the word 'irreparable' is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character, or which occasion damages which are estimable only by conjecture and not by any accurate standard......As this argument is generally presented, it seems to be supposed that injunctions can apply only to very great

injuries; and it would follow that he who has not much property to be injured, cannot have this protection for the little he has. Besides this, where the right invaded is secured by statute or by contract, there is generally no question of the amount of damage, but simply of the right." As applied in equity, "irreparable injury" is, in fact, nothing else than the antithesis of "an adequate remedy at law"; where the latter does not exist (as is the case here), the former does. Clearly it would be "only by conjecture and not by any accurate standard" that a jury could measure the damages caused by depriving plaintiff of a convenient access to his property, whether for its ordinary uses or for the erection of a building thereon.

It was admitted at bar that when plaintiff learned of the intention of defendants to excavate their adjoining property below the bottom of his cellar wall, he requested leave to enter on that property temporarily, for the purpose of underpinning the wall and thus prevent his building from falling; their refusal has compelled him to tear down his building and erect a new one. The great and unnecessary expense thus cast upon plaintiff, and the additional cost to which he will probably be put in the course of that construction, because of his deprivation of the use of the three streets, were not, and are not now, conducive to a neighborly adjustment of this controversy. Nevertheless, we trust that the principle of the Golden Rule will hereafter guide the parties, when the record is returned for further proceedings, as it must be, since it does not give sufficient data to enable us to enter a proper decree. While defendants should be required to commence at once to restore the status as it existed before they wrongfully tore up the bed of the streets, and (without weighing its effect on the building they are constructing) to continue diligently in the work until the restoration is complete, it does not appear how long a time should be allowed for the purpose, and, in view of a possible later dispute as to what would be dili-

gence in proceeding, the decree should, as definitely as possible, fix the time for such completion.

The order of the court below is reversed, the motion for a preliminary injunction is reinstated and the record is remitted that further proceedings, consistent with this opinion, may be forthwith taken.

SUR REQUEST FOR A SUPPLEMENTAL ORDER.

OPINION OF THE COURT BY MR. JUSTICE SIMPSON, January 18, 1926:

Because of a difference of opinion regarding the scope of our ruling in this case, plaintiff's counsel asks us to "add to the order reversing the court below, a definition of the character and extent of the restoration of the destroyed streets which the defendants are required to make." He contends that they should be compelled to fill up solidly the space below the surface of the streets, with soil, supported by stone retaining walls or sloping banks of earth, though in his bill he prayed only for such a restoration as will give to plaintiff "free use [of the streets] in accordance with the terms and conditions of the rights and easements given to him in his deeds." As we shall hereafter show, this is all he could legally require. Neither by the pleadings, nor at the argument, were we asked to decide the present point; nor would this have been possible, if we had been asked, since it was not litigated below, and there neither was nor is any evidence in the record as to how restoration can best be effected. Nevertheless, for the guidance of the court below, we will indicate briefly the procedure to be followed, when evidence has been produced which will enable that tribunal to determine the controlling facts.

Being owners of the fee in the streets, defendants' title (subject to plaintiff's easement) extends, as has been somewhat quaintly said, from the heavens above to the centre of the earth beneath; and this gives them "the right to make any use of the servient soil that does not interfere with the easement": Duross v. Singer, 224 Pa.

573, 575; Mershon v. Fidelity Ins. Trust and Safe Deposit Co., 208 Pa. 292; Mershon v. Walker, 215 Pa. 41; Mercantile Library Co. v. Fidelity Trust Co., 235 Pa. 5. In Mershon v. Walker, supra, where, as here, the excavation in the street had been made before legal proceedings were begun, we held that, since the owner of an easement "cannot complain of any use of the space above or beneath the surface not affecting the rights defined by his deed," we would not require the excavation to be filled up, inasmuch as the chancellor had found as a fact that the cement and flagstones covering the opening gave to plaintiff as full a use of the street as he had before the excavation was made.

Had plaintiff in this case filed his bill before the surface of the streets was destroyed, it would have been the court's duty to prevent their injury; but defendants would still have had the right to excavate below and mechanically support the bed of the streets, for the purpose of acquiring and using the space thus obtained, if this would have been possible without affecting the easement. In fact, however, all use of the streets was destroyed before the bill was filed, and while the conduct of defendants (judged by the present record), was unwarranted in law and inexcusable in morals, nevertheless equity will not compel them to go to the useless expense, without benefit to the plaintiff (if the fact be so), of restoring the streets in the way the latter now insists upon, and, only after this is done, permit them to exercise their legal right of using the space below, if they can so support the streets above as to give to plaintiff a passageway of the same character as that which existed before the wrong was done. This course should be compelled, despite the double expense, if it is found to be necessary in order that plaintiff may have the earliest use of his easement to the same extent as before defendants obstructed it; on the other hand, if that use can be restored as quickly and as effectively by erecting at once a permanent support for and reconstructing the bed of

the streets, this course should be pursued, and plaintiff left to a recovery of damages, compensatory in any event, and punitive also, if the facts are found to warrant such an award, for the injury he suffered from the time he was first deprived of the use of the streets until the date of final and complete restoration.

The order heretofore made will stand as the order of the court.