Kanefsky *v.* Dratch Construction Company, Appellant.

Argued November 10, 1953. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*David B. James, Jr.,* with him *Henry Panfil* and *Moore, Panfil & James,* for appellants.

*Simon Mustokoff,* for appellant.

*Charles M. Solomon,* with him *J. Victor O'Brien, Nathan L. Posner* and *Fox, Rothschild, O'Brien & Frankel,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 13, 1954:

This controversy is over defendants' right to use a driveway which is located in the rear of plaintiffs' houses.

Dratch Construction Company, one of the defendants, owned a plot of ground in the City of Philadelphia constituting the easterly half of a square city block bounded by Rugby Street on the east, Phil-Ellena Street on the south, Woolston Avenue on the west, and Vernon Road on the north. Its property ran for a distance of about 729 feet along Rugby Street and extended in depth toward Woolston Avenue for a distance of approximately 115 feet. In 1948 it constructed on its land a 15 foot driveway extending between Phil-Ellena Street and Vernon Road and paralleling, at a distance therefrom of three feet, the boundary line between the Dratch property and the Woolston Avenue property to the rear. It then con-

structed 39 houses along the Rugby Street frontage and sold them to various home buyers, among whom were the present plaintiffs. The deed to each of the purchasers included the area of the driveway in the rear of the property conveyed but not the three feet beyond the driveway.[1] Every deed granted the use of the driveway and also contained the following reservation in the habendum clause: "And Also Reserving unto the said Grantor, its Successors and Assigns, the right and privilege of granting the use of the aforesaid driveway to any person or persons, corporation or corporations to whom all or any part of the remaining ground owned by it may at any time hereafter be sold and conveyed."

The parties do not agree as to the reason for the retention by Dratch Construction Company of the three foot strip. Plaintiffs claim that Dratch told them it was for their protection so that the occupants of the Woolston Avenue properties in the rear would not be able to use the driveway but would have to build a separate one for themselves. How plaintiffs would be better protected in that regard by having Dratch Construction Company retain title to the strip instead of deeding it to plaintiffs is not apparent. Dratch denies having made any such statement. In 1950 Dratch Construction Company sold and conveyed the three foot strip to Cora E. Milligan, who then owned the remaining half of the block, by a deed which contained the following grant: "Together with the free and common use, right, liberty and privilege of said Fifteen feet wide driveway as and for a passage-

---

[1] Dratch Construction Company retained title to the three foot strip only for a distance of approximately 631 feet northerly from Phil-Ellena Street. Beyond that point to Vernon Road its deeds to purchasers conveyed title all the way to the boundary line of the property to the rear.

way, driveway and watercourse at all times hereafter forever, for any buildings hereafter built by the purchaser, or nominee, his or her heirs and assigns, on Woolston Avenue between Vernon Road and Phil-Ellena Street or on the Northwesterly side of Phil-Ellena Street between Woolston Avenue and said Fifteen feet wide driveway, this use to be for its entire distance from Phil-Ellena Street to Vernon Road. . . ." In 1951 Cora E. Milligan conveyed the three foot strip together with all the rest of her ground to defendant Parkman Homes, Inc. by a deed which contained this same grant of the right to use the driveway. Parkman Homes, Inc. and defendant Fishman and Park, builders, began constructing houses along Woolston Avenue and, in connection with that operation, started using the driveway to bring in the necessary building materials. Thereupon plaintiffs filed a complaint in equity seeking an injunction to restrain those defendants from using or trespassing on the driveway and praying also that plaintiffs' deeds be reformed by deleting therefrom the right reserved by Dratch Construction Company to grant the use of the driveway to any persons to whom it might thereafter convey all or any part of the remaining ground owned by it.[2] The court entered a decree granting their prayer to reform the deeds and issuing the injunction requested. Dratch Construction Company, Parkman Homes, Inc., and Fishman and Park appeal from that decree.

Much argument pro and con is devoted by the parties to the question whether Dratch Construction Company was guilty of deception and fraud in its dealings with plaintiffs by concealing from them its al-

---

[2] Subsequently the 35 remaining owners and occupants of the houses in the Rugby Street row were allowed to intervene as party plaintiffs and 4 purchasers of the houses on Woolston Avenue as parties defendants.

legedly real intention to enable, in some way, subsequent purchasers of lots on the Woolston Avenue front to make use of the driveway in common with the property owners on Rugby Street. In view of what we conceive to be the controlling issue in the case it is not necessary for us to discuss the question thus argued, nor whether, even if any such fraud was perpetrated, it can properly be imputed to the other defendants on the ground of constructive notice.

The real and determinative question is in regard to the interpretation of the reservation in the deed from Dratch Construction Company to plaintiffs of the right of the grantor to grant the use of the driveway to any persons to whom all or any part of the remaining ground owned by it might at any time thereafter be sold and conveyed. This language is not ambiguous, and it must therefore be construed according to its clear and literal terms and not as colored or amended by any oral conversations between Dratch and the plaintiffs or by any alleged intention of Dratch, secret or revealed. As was stated in *Nallin-Jennings Park Co. v. Sterling,* 364 Pa. 611, 615, 73 A. 2d 390, quoting from *Witman v. Stichter et al.,* 299 Pa. 484, 488, 149 A. 725, 726: " ' "In construing the grant or other instrument whereby the easement is created, the document itself, and that only, can, in the first instance, be looked at to discover the extent and nature of the agreement and the terms of the grant. If on the face of the document no doubt arises that the words are used in their primary sense, and if, read in that sense, they are plain and unambiguous, the matter is concluded": Gale on Easements, page 80; . . . The terms of the grant, as they can be learned either by words clearly expressed, or by just and sound construction, will regulate and measure the rights of the grantee: . . . .' " And in *Liquid Carbonic Co. v. Wallace,* 219 Pa.

457, 460, 68 A. 1021, it was said, quoting from Hopewell Mills v. Savings Bank, 150 Mass. 519: " 'The intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act. It is an intention which settles, not merely his own rights, but the rights of others who have or may acquire interests in the property. They cannot know his secret purpose, and their rights depend, not upon that, but upon the inferences to be drawn from what is external and visible.' "

It is first to be noted that, as all the parties agree, the reservation of the right to grant the use of the driveway to persons becoming the purchasers of other ground owned by the grantor was not the reservation of a right to grant an easement in gross but only an easement as an appurtenance to such other ground: *Ulrich v. Grimes,* 94 Pa. Superior Ct. 313, 316.

What was the "remaining ground" then owned by the Dratch Construction Company? It owned the Rugby Street half of the block, and it is obvious that, as it sold off lots from out of this area to home buyers and gave to each of them an easement for the use of the 15 foot driveway over the properties of the other purchasers, it was naturally obliged to reserve in each deed the right to grant to such other purchasers the use of the driveway over the lot of the grantee in that particular deed. In addition to the Rugby Street ground remaining in its ownership Dratch Construction Company, having retained title thereto, owned the three foot strip to the rear of the driveway; therefore the use of the driveway—for what such easement might be worth—became appurtenant to that strip also. No other ground was owned then, or indeed at any later time, by Dratch Construction Company, and therefore to no other ground than as thus stated did the reservation of the right to grant the use of the driveway apply.

Did the acquisition by Cora E. Milligan of the title to the three foot strip, thereby adding it to her ownership of the half of the block fronting on Woolston Avenue, entitle her to the use of the driveway as an appurtenance not only to that strip but to all such other ground? In the deed to her from Dratch Construction Company it undertook to grant the use of the driveway "for any buildings hereafter built by the purchaser, or nominee, his or her heirs and assigns, on Woolston Avenue. . . ." But did it have the right to make such a grant and did Cora E. Milligan have the right in turn to convey it to defendants? Clearly, the answer to that question must be in the negative. It is elementary law that an easement cannot be extended by the owner of the dominant tenement to other land owned by him adjacent to or beyond the land to which it is appurtenant,[3] for such an extension would constitute an unreasonable increase of the burden of the servient tenement. It is clear, therefore, that these defendants had no right to use the driveway for the purpose of their operations in connection with the building of houses on Woolston Avenue, nor do the purchasers of the lots on Woolston Avenue have any such right by virtue of their ownership and occupancy of those lots and the buildings thereon.

---

[3] *Watson v. Bioren*, 1 S. & R. 227, 230; *Kirkham v. Sharp*, 1 Wh. 323, 334; *Lewis v. Carstairs*, 6 Wh. 193, 207; *Shroder v. Brenneman*, 23 Pa. 348; *Coleman's Appeal*, 62 Pa. 252, 275; *Schmoele v. Betz*, 212 Pa. 32, 36-38, 61 A. 525, 526, 527; *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 284, 285, 293, 54 A. 2d 35, 42, 46; *Hollenback v. Tiffany*, 50 Pa. Superior Ct. 297; *Shawnee Lake Association v. Uhler*, 131 Pa. Superior Ct. 146, 156, 198 A. 910, 914, 915; *Walker v. Walker*, 153 Pa. Superior Ct. 20, 27, 28, 33 A. 2d 455, 459; *Davis v. Winsor*, 165 Pa. Superior Ct. 212, 214, 215, 67 A. 2d 569, 570, 571; *Myers, Trustee, v. Birkey*, 5 Phila. 167, 170; *Walker v. Gerhard*, 9 Phila. 116.

The Parkman defendants contend that the court should not have granted the injunction because they have been constructing houses on Woolston Avenue at a cost of over $400,000 and because it will be a great hardship on the purchasers of those houses to be obliged to construct a driveway of their own on the rear of their properties, whereas the benefit that the plaintiffs will derive from the injunction is comparatively slight. Since, however, plaintiffs have a right of property it makes no difference that the right may be insignificant in value to them as compared with the advantages that would accrue to defendants from its violation. Even though greater injury may result from granting than refusing an injunction, a plaintiff is entitled thereto if the defendant's act is tortious: *Sullivan v. Jones & Laughlin Steel Co.*, 208 Pa. 540, 554, 555, 57 A. 1065, 1071; *Stuart v. Gimbel Bros. Inc.*, 285 Pa. 102, 106-108, 131 A. 728, 729; *Weiss & Maen v. Greenberg*, 101 Pa. Superior Ct. 24, 30. Defendants also invoke the doctrine of laches, but they did not begin to construct the houses on Woolston Avenue and to use the driveway until the end of February, 1952 and plaintiffs filed the present complaint in equity only six weeks later, so there is no ground for an accusation against them of undue delay.

Whether or not there was, as alleged, any fraud on the part of Dratch Construction Company, the court should not have deleted from plaintiffs' deeds the clause reserving to the grantor the right to grant the use of the driveway to persons who might thereafter purchase all or any part of the remaining ground owned by it, since that reservation was, and is, necessary, as previously pointed out, to assure to each of the purchasers of the houses on Rugby Street the right to use the driveway over the properties of the other purchasers.

As thus modified the decree is affirmed, at the cost of appellants.

———

Plaintiffs, grantees of Dratch Construction Company, prayed (1) for an injunction, and (2) for a reformation of their respective deeds by deleting therefrom Dratch's right to grant the use of the present 15 foot driveway.

Dratch Construction Company, owners and developers of a large piece of ground fronting on Rugby Street, conveyed parcels of said ground to plaintiffs "reserving unto the said Grantor, its Successors and Assigns, the right and privilege of granting the use of the aforesaid driveway to any person or persons, . . . to whom all or *any part of the remaining ground owned by it may at any time hereafter be sold and conveyed."* Could any reservation be clearer or more explicit?

The question involved is: Did Dratch Construction Company have a legal right to grant to these defendants the use of the present 15 foot driveway?

It is important to note at the outset that the majority opinion does not assert any fraud on the part of Dratch or any party in this case; and that those defendants who claim title from the owner and common grantor, Dratch, are innocent purchasers for value,—without notice of any claim by plaintiffs or by anyone questioning or seeking to limit or invalidate the clear and explicit reservation—and that all the deeds containing the aforesaid reservation of the right to grant the use of the driveway were *recorded.* Nevertheless, plaintiffs contend that Dratch, the common grantor, instead of deeding to them the 3 foot strip of ground bordering their land, *retained title thereto*

*for the purpose of better protecting them.* Such a contention is absurd. Dratch, as the owner and common grantor, could have reserved, as has been done thousands of times before, the right to grant the use of this driveway to others in each deed it made to the purchaser of each of its lots fronting on Rugby Street, without the necessity of reserving to itself the title to a 3 foot strip of land or any land whatsoever. The majority opinion points out that plaintiffs' contention is unreasonable and absurd; yet strangely decides that that is what the reservation in effect meant. The majority hold that the developer (grantor) who owned the 3 foot strip, even if it bought the property adjoining the 3 foot strip, could not allow subsequent purchasers of that property to use the driveway. The effect of the majority's opinion is to make the ownership and reservation of the 3 foot strip—with its right to grant to a subsequent purchaser the use of the 15 foot driveway—absolutely useless, meaningless and absurd, for it is obvious and indisputable (1) that no building of any kind could be erected on a 3 foot strip of land; and (2) that the grantor, *by virtue of owning the remaining ground with Rugby Street frontage,* could grant such easement to all subsequent purchasers of that land without reserving to itself the ownership of this 3 foot strip of land. What possible use was there, therefore, for this 3 foot strip of land except the use contended for by Dratch and the other defendants herein? What possible good could that 3 foot strip of land be to Dratch if it did not intend either (a) to purchase the ground on the other side of the 3 foot strip which fronted on Woolston Avenue, divide it into lots and allow the purchasers thereof to use this driveway, or (b) to sell the 3 foot strip to the owner or owners of the adjoining contiguous land, granting him or them in turn the right to use the

driveway. Any other construction is so unreasonable as to be unbelievable. This reservation is explicit and clear as crystal. Where a contract is clear, its meaning must be ascertained by the Court from its language; it must receive a reasonable interpretation; and if it is susceptible of two interpretations, a construction will not be adopted which is unreasonable or absurd or which will produce a result that is unreasonable or absurd. Cf. *Brown v. Raub*, 357 Pa. 271, 54 A. 2d 35; *Mowry v. McWherter*, 365 Pa. 232, 238, 74 A. 2d 154; *Com. v. Hallberg*, 374 Pa. 554, 97 A. 2d 849; Statutory Construction Act of May 28, 1937, §52, P.L. 1019, 46 PS 552.

That our construction accurately evidences the intention of the parties is further confirmed by the fact that little more than a year thereafter Dratch Construction Company, unable to purchase the adjoining ground, sold and conveyed the 3 foot strip to the owner of this adjoining contiguous remaining half of the block by a deed which contained the following grant: "TOGETHER with the free and common use, right, liberty and privilege of said Fifteen feet wide driveway as and for a passageway, driveway and watercourse at all times hereafter forever, for any buildings hereafter built by the purchaser, or nominee, his or her heirs and assigns, on Woolston Avenue between Vernon Road and Phil-Ellena Street or on the Northwesterly side of Phil-Ellena Street between Woolston Avenue and said Fifteen feet wide driveway, this use to be for its entire distance from Phil-Ellena Street to Vernon Road, . . . ."

The authorities cited by the majority that "an easement cannot be extended by the owner of the dominant tenement to other land owned by him adjacent to or beyond the land to which it is appurtenant, [where] such an extension would constitute an

unreasonable increase of the burden of the servient tenement," are, *on their facts,* clearly distinguishable. Furthermore, the fallacy of applying such a principle to the facts in the instant case is, on analysis, clear, because the burden is not *increased* by this extension, *for* (according to the majority) *no burden can exist at all* by virtue of the 3 foot strip ownership. Moreover, when an easement is granted or reserved, the fact that the burden of the servient tenement will be increased by future use is immaterial if the language of the grant or reservation is broad enough to permit, as here, such use.

I would reverse the decree of the Court below and dismiss plaintiffs' Bill of Complaint.