J-S49032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CONSOLIDATED EAGLE, LTD. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BL GP, LLC, TRADING AS BL | : | No. 407 EDA 2019 |
| PARTNERS GROUP, L.P.; 15 WA FIN | : | |
| GP, LLC, TRADING AS BL 219 | : | |
| PARTNERS, LP; PEARL PROPERTIES, | : | |
| LLC; PEARL PROPERTIES | : | |
| COMMERCIAL MANAGEMENT, LLC; | : | |
| CHOICE HOTELS INTERNATIONAL, | : | |
| INC.; AND ABC CORP. 1-5 | : | |

Appeal from the Order Entered December 17, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  June Term, 2018. No. 01684

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED NOVEMBER 26, 2019**

Appellant Consolidated Eagle, Ltd. (hereinafter Appellant) appeals from the Order entered in the Court of Common Pleas of Philadelphia County on December 17, 2018, denying its motion for preliminary injunction.[1]  Upon careful review, we affirm.

_____

* Former Justice specially assigned to the Superior Court.
[1] An order denying a preliminary injunction is immediately appealable as an interlocutory appeal as of right pursuant to Pa.R.A.P. 311(a)(4).

The trial court set forth the facts and procedural history herein as follows:

>        [Appellant] is the former owner of a real property located at 227-229 S. Broad St, Philadelphia. In 1987, [Appellant] sold the property to the Samuel Rappaport Partnership. [Appellant] maintained air rights over 227-229 S. Broad as part of the deal. However, the Samuel Rappaport Partnership was granted right of first refusal to buy these air rights in the future for $1,450,000. According to agreed terms, if the partnership or its successors decline to exercise right of first refusal, [Appellant] and successors may accept any bone fide offer.
>        In August 2014, the Samuel Rappaport Partnership (and Samuel Rappaport's estate) sold the 227-229 S. Broad St. property to BL Partners.
>        According to the Complaint, [Appellant] began negotiations in January 2018 with TCS South Broad Associates, LLC ("TCS") to sell these air rights. By then a new Center City hotel called the Cambria had been constructed by BL Partners on the 219-225 S. Broad Street parcels. The Cambria's south windows overlook the rooftop relevant to this case at 227-229 S. Broad Street. In addition to 227-229 S. Broad Street, BL Partners owns the next door three story corner building at 221 S. Broad Street.
>        According to the Complaint, in late February 2018, [Appellant] agreed to sell the air rights to TCS for $1,500,000 contingent on whether BL Partners exercised its right of first refusal. At some point, BL Partners objected to the proposed sale. As a result, this commercial dispute developed over the air rights.
>        The Complaint alleges that sometime later in the spring of 2018, [Appellant's] representatives observed that air conditioning equipment had been installed on the roof of 227-229 S. Broad St. The Complaint also alleges that the Cambria building's cantilevers and balconies encroach on the disputed air space.
> Following a hearing, [Appellant's] petition for preliminary injunction was denied on December 17, 2018.[1]
>
> ____
>
> [1]In its Complaint, [Appellant] avers five causes of action: (1) breach of contract/permanent injunctive relief (2) declaratory relief, (3) tortious interference, (4) tortious interference, and (5) trespass.

- 2 -

Trial Court Opinion, filed 5/6/19, at 1-2 (tortious interference listed twice in original).

The trial court's December 17, 2018, Order followed Appellant's filing of its Petition for a Preliminary Injunction on July 12, 2018. Therein, Appellant sought to compel BL GP, LLC, Trading as BL Partners Group, L.P.; 15 WA FIN GP, LLC, trading as BL 219 Partners, L.P.; Pearl Properties, LLC; Pearl Properties Commercial Management, LLC; Choice Hotels International, Inc.; and ABC Corp. 1-5 (hereinafter collectively Appellees) to, *inter alia*, remove what it deems to be various encroachments from its air rights pertaining to the 227-229 S. Broad Street property. *Id*. at ¶ 5. These items include "several air conditioning condensers, an electric junction box, HVAC duct work, a massive generator, and other equipment and appurtenances. . . ." *Id*. at ¶ 52. Appellant further maintained that "[i]t also appeared to the naked eye that architectural elements of the Hotel itself, including cantilevers and balconies, also encroach upon and violate the Air Rights (the "Additional Encroaching Improvements" and together with the Encroaching Improvements, the "Encroaching Improvements")." *Id*. at ¶ 54. Appellant alleged that a survey confirmed the existence of the encroaching improvements. *Id*. at ¶ 63.

Specifically, Appellant stated:

64. In particular, it has now been confirmed that one (1) massive generator, three (3)(of 6) A/C Units, an electric junction box, a steel girder, and two (2) exhaust fans, each existing for the

use and benefit of the Hotel (rather than the Subject Property) exist within and encroach upon the Air Rights. See Exhibit 16.

65. In addition it has also been confirmed that the Hotel structure itself encroaches upon the Air Rights for a length of approximately forty-one (41') feet (or approximately 31% of the length of the Air Rights) by as much as 1 foot. See Exhibit 16.

*Id*. at ¶¶ 64-65.

As a result, Appellant sought the "immediate removal of the Encroaching Improvements" along with an "Order confirming that the Right of First Refusal has lapsed." *Id*. at ¶ 66.[2]

In its aforementioned Order entered on December 17, 2018, the trial court denied Appellant's request. A footnote to the Order reads as follows:

[1][Appellant] failed to proffer evidence of irreparable harm to its air rights arising from alleged encroachments, consisting of a generator, three A/C/ [sic] units, a steel girder and two exhaust fans resting on the roof of the existing building at 227-229 S. Broad Street. (See Paragraph 64 of [Appellant's] Petition for Preliminary Injunction). If declaratory judgment is found in favor of [Appellant], relocating these objects will be addressed and ordered. Nothing about them presently requires emergency injunctive relief.

[Appellant] claims that a separate encroachment to its air rights is caused by cantilevers and balconies of the new Cambria Hotel invading [Appellant's] air rights. However, [Appellees] have a right of first refusal to purchase these air rights in the event the encroachments are founded. Whether such encroachment exists is a factual subject for trial. But on the legal question whether a

_____

[2] In an apparent typographical error, the petition contains numbered paragraphs one through sixty-six up to page sixteen at which time the paragraphs begin with number sixty-two and numerically follow through eighty-five thereafter, ending on page twenty-one. The above citations are from the first set of paragraphs numbered sixty-four, sixty-five and sixty-six found on page sixteen.

> bona fide offer has already been made, [Appellant] has not shown a likelihood of success meriting injunctive relief.

Trial Court Order entered 12/17/18, at n. 1.

Appellant filed a timely notice of appeal on January 16, 2019. The trial court did not order, and Appellant did not file, a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). However, as previously cited, the trial court filed a Rule 1925(a) Opinion on May 6, 2019.

In its appellate brief, Appellant presents six issues for this Court's review:

> [1] Did the [t]rial [c]ourt abuse its discretion in denying Appellant's injunction application?
>
> [2] Did the [t]rial [c]ourt misapply controlling law in concluding that Appellant had failed to demonstrate irreparable harm where it was undisputed that Appellees had constructed and/or installed encroachments into the Air Rights (as hereinafter defined), a trespass, and where long standing and oft cited Pennsylvania Supreme Court precedent holds that such a trespass constitutes irreparable harm as a matter of law?
>
> [3] Did the [t]rial [c]ourt misapply controlling law in concluding that Appellant had failed to show "urgent necessity" based upon its conclusion that the complained of encroachments caused "no more than a minimal inconvenience, if any" to Appellant, but the presumed harm to [Appellees] was significant, when Pennsylvania Supreme Court precedent expressly holds that these were not proper considerations when dealing with a trespass to real property such as that at issue in the subject injunction application?
>
> [4] Did the [t]rial [c]ourt commit reversible error by misapplying controlling law in considering the status quo as it existed *after* the complained of conduct, rather than the status quo as it existed *before* the complained of conduct as required by controlling precedent? (emphasis in original).

[5] Did the [t]rial [c]ourt abuse its discretion in concluding that Appellant had failed to demonstrate that it was likely to prevail at trial with respect to its request for injunctive relief mandating the removal of the admitted encroachments by conflating that issue with facts alleged only with respect to the separate and distinct issue of whether BL Partners had waived its right of first refusal?

[6] Did the [t]rial [c]ourt err in denying Appellant an evidentiary hearing before denying its injunction application?

Brief for Appellant at 3-5. As these issues are interrelated, we will address them together.[3]

It is axiomatic that this Court's review of a trial court's order granting or denying preliminary injunctive relief is highly deferential. ***Porter v. Chevron Applachia, LLC***, 204 A.3d 411, 416 (Pa.Super. 2019) (citation omitted). Thus, in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to examine the record to determine if there were any apparently reasonable grounds for the action of the court below and the scope of our review is plenary. ***Id***.

Our Supreme Court has detailed the necessary considerations in a matter seeking a preliminary injunction as follows:

As an initial matter, we restate here that, in general, appellate courts review a trial court order refusing or granting a preliminary injunction for an abuse of discretion. ***Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz***, 529 Pa. 241, 602 A.2d

---

[3] Although it presents six questions for this Court's review, Appellant divides the argument portion of its appellate brief into only five parts. This is in violation of Pa.R.A.P. 2119(a) which provides that "[t]he argument shall be divided into as many parts as there are questions to be argued."

1277, 1286–87 (1992); **Bloomingdale's By Mail, Ltd. v. Dep't of Revenue**, 513 Pa. 149, 518 A.2d 1203, 1204 (1986).

We have explained that this standard of review is to be applied within the realm of preliminary injunctions as follows:

> [W]e recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court].

**Roberts v. Board of Dirs. of Sch. Dist**., 462 Pa. 464, 341 A.2d 475, 478 (1975); **see also Giant Eagle Mkts. Co. v. United Food & Commercial Workers Union, Local Union No. 23**, 539 Pa. 411, 652 A.2d 1286, 1291 (1995) (stating "apparently reasonable grounds" standard); **Commonwealth v. Coward**, 489 Pa. 327, 414 A.2d 91, 98 (1980) (same); **Herman v. Dixon**, 393 Pa. 33, 141 A.2d 576, 577 (1958) (same). This Court set out the reasons for this highly deferential standard of review almost a hundred years ago:

> It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony—hence our almost invariable rule is to simply affirm the decree, or if we reverse it to give only a brief outline of our reasons, reserving further discussion until appeal, should there be one, from final judgment or decree in law or equity.

**Hicks v. Am. Natural Gas Co.**, 207 Pa. 570, 57 A. 55, 55–56 (1904). Thus, in general, appellate inquiry is limited to a determination of whether an examination of the record reveals that "any apparently reasonable grounds" support the trial court's disposition of the preliminary injunction request. **See Roberts**, 341 A.2d at 478.

In ruling on a preliminary injunction request, a trial court has "apparently reasonable grounds" for its denial of relief where it properly finds that any one of the following "essential

prerequisites" for a preliminary injunction is not satisfied. *See Maritrans GP*, 602 A.2d at 1282–83 (requirements for preliminary injunction are "essential prerequisites"); *County of Allegheny v. Commonwealth*, 518 Pa. 556, 544 A.2d 1305, 1307 (1988) ("For a preliminary injunction to issue, every one of the [ ] prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others."). First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. *Singzon v. Dep't of Pub. Welfare*, 496 Pa. 8, 436 A.2d 125, 127–28 (1981); *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164, 1167–68 (1977); *Ala. Binder & Chem. Corp. v. Pa. Indus. Chem. Corp.*, 410 Pa. 214, 189 A.2d 180, 184 (1963). Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. *Maritrans GP*, 602 A.2d at 1283; *Valley Forge Historical Soc'y v. Washington Mem'l Chapel*, 493 Pa. 491, 426 A.2d 1123, 1128–29 (1981); *Ala. Binder & Chem. Corp.*, 189 A.2d at 184. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. *Valley Forge Historical Soc'y*, 426 A.2d at 1128–29; *Herman*, 141 A.2d at 577–78. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. *Anglo–Am. Ins. Co. v. Molin*, 547 Pa. 504, 691 A.2d 929, 933–34 (1997); *Maritrans GP*, 602 A.2d at 1283–84; *Shenango Valley Osteopathic Hosp. v. Dep't of Health*, 499 Pa. 39, 451 A.2d 434, 440 (1982); *Singzon*, 436 A.2d at 127–28. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. *John G. Bryant Co.*, 369 A.2d at 1167–71; *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 207 A.2d 768, 771–73 (1965). Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest. *Maritrans GP*, 602 A.2d at 1283; *Philadelphia v. District Council 33, AFSCME*, 528 Pa. 355, 598 A.2d 256, 260–61 (1991).

***Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.***, 573 Pa. 637, 645–47, 828 A.2d 995, 1000–01 (2003) (footnote omitted).

As previously stated, Appellant sought the immediate removal of what it terms the Encroaching Improvements in its Petition for a Preliminary Injunction. Such relief would constitute a mandatory injunction and require greater scrutiny on appellate review. ***See Porter supra*** at 416, n. 1 citing ***Kessler v. Broder***, 851 A.2d 944, 947 (Pa.Super. 2004), quoting ***Mazzie v. Commonwealth***, 495 Pa. 128, 432 A.2d 985, 988 (1981) ("[I]n reviewing the grant of a mandatory injunction, we have insisted that a clear right to relief in the plaintiff be established.").[4]

Appellant initially asserts the trial court abused its discretion in denying its petition for an injunction. Appellant argues it is "long standing law of Pennsylvania [] that <u>any</u> trespass to, or deprivation of, a real property interest constitutes immediate irreparable harm *per se* and does not require any further showing." Brief for Appellant at 27 (emphasis in original). Appellant cites to several, decades-old cases decided by the Pennsylvania Supreme Court in support of this position. Brief for Appellant at 28-34 citing ***Stuart v.***

---

[4] While mandatory injunctions command the performance of some positive act to preserve the *status quo*, prohibitory injunctions enjoin a party from doing an act that will change it. ***Mazzie v. Commonwealth****,* 495 Pa. 128, 432 A.2d 985 (1981).

*Gimbel Bros., Inc.,* 285 Pa. 102, 131 A. 728 (1926); *Kenefsky v. Dratch Const. Co.*, 376 Pa. 188, 101 A.2d 923 (1954); *Peters v. Davis*, 426 Pa. 231, 231 A.2d 748 (1967).[5]  Appellant concludes that because it is "undisputed" that encroachments exist, the trial court improperly employed a "traditional injunction analysis" in denying its request for an injunction.  *Id*. at 33.

Appellant further contends the trial court misapplied the law in considering an "incorrect status quo."  Appellant asserts the court should have considered the "status quo before Appellees built the hotel (into the Air Rights) and elected to install mechanicals on the roof of the Subject Property, rather than on the Hotel Property."  Brief for Appellant at 38 (footnote omitted). Appellant reasons that Appellees do not dispute at least one horizontal and several vertical encroachments (trespasses) exist, therefore, under *Stuart*, *supra*, and its progeny, it is likely to succeed on the merits of its claim.  *Id*. at 39-40.

Finally, Appellant maintains the trial court abused its discretion in failing to conduct an evidentiary hearing.  Appellant states it was prohibited from presenting testimony or evidence, despite its readiness to do so, and that the trial court's failure to afford Appellant that opportunity requires reversal and

---

[5] Although Appellant presents the facts of these cases as "highly similar" to those herein, as we shall discuss in more detail *infra*, each of these cases contains an analysis which is limited to a procedural posture and facts before the Court that differ from those before us.

remand for a hearing. Appellant relies solely upon a decision of the Commonwealth Court, **Commonwealth v. Schall**, 297 A.2d 190 (Pa.Commw. 1972), to support its contention. **Id**. at 44-45.

In **Stuart**, the Pennsylvania Supreme Court held "[t]he rule that an injunction will not be granted where it will result in a greater injury to defendant than its refusal will cause to plaintiff is well settled but ha[d] no relevancy to [that] case." **Stuart**, 285 Pa. at 106, 131 A. at 729. Therein, the plaintiff was the owner of property in Philadelphia, and the deeds in his clear chain of title conveyed to him an easement in several streets with the right to build over part of them. Acting on the supposed authority of a city ordinance to erect a large department store on abutting property, the defendants fenced off the streets and excavated their adjoining land below the plaintiff's cellar wall. This action prevented the plaintiff from using his property and would compel him to tear down his building and erect a new one.

The plaintiff "promptly pretested," and the Supreme Court ultimately reversed the trial court's refusal of his request for a preliminary injunction, stressing that it did not matter that the plaintiff's property was of insignificant value to him as compared with the advantages that the defendants would attain by continuing their venture. The Court reasoned that as the plaintiff's rights depended solely on the construction of the deeds, which left no doubt in the chain of title, monetary compensation would be an inadequate remedy, for "it would resul[t] in a pro tanto taking of the property for a private use,

and this, as we have shown, cannot be done." ***Stuart***, at 108-09, 131 A. at 730.

The ***Kanefsky*** case concerned the defendants' right to utilize a driveway located in the rear of the plaintiffs' houses. Therein, the trial court granted the plaintiffs an injunction and entered a decree granting their request to reform the deeds to their property by deleting therefrom the right reserved by a construction company to allow any individuals to whom it may later convey all or any part of the remaining ground it owned to use a driveway. In reversing the trial court, our Supreme Court stated the "real and determinative question is in regard to the interpretation of the reservation in the deed from Dratch Construction Company to plaintiffs of the right of the grantor to grant the use of the driveway to any persons to whom all or any part of the remaining ground owned by it might at any time thereafter be sold and conveyed." ***Kanefsky***, 376 Pa. at 192-93, 101 A.2d at 924-25. The Court ultimately determined that whether or not there had been any fraud on the part of Dratch Construction Company, as the plaintiffs had alleged, "the court should not have deleted from the plaintiffs' deeds the clause reserving to the grantor the right to the use of the driveway to persons who might thereafter purchase all or any part of the remaining ground owned by it, since that reservation was, and is, necessary . . . to assure to each of the purchasers of the houses on Rugby Street the right to use the driveway over the properties of the other purchasers. ***Kanefsky***, at 196, 101 A.2d at 927.

Finally, in **Peters**, the Pennsylvania Supreme Court framed the issue before it as pertaining to "the character and the extent of the relief to be afforded by a court of equity for an [i]ntentional violation of building line restrictions contained in a deed." **Peters**, 426 Pa. at 231, 231 A.2d at 748. Therein, the plaintiff landowners sought a mandatory injunction directing the defendant to remove portions of his dwelling which violated deed restrictions concerning setback requirements. The Supreme Court ultimately determined the injunctive relief should have been granted because the record "portrays vividly defiance and disregard by [defendant] of both the zoning ordinance and the restrictions." **Peters**, at 237, 231 A.2d at 751.

Clearly, the foregoing decisions were limited to the very different facts presented before our Supreme Court in each case, and contrary to Appellant's claims, none made a broad legal pronouncement that is determinative herein. As such, Appellant's attempt to evade the application of the six prerequisites to obtain a preliminary injunction by relying upon the aforementioned caselaw is unavailing.

In addition, Appellant relies upon **Schall**, a decision by our colleagues on the Commonwealth Court, in support of its contention it was not provided with an opportunity for a hearing on its motion for preliminary injunction. We remind Appellant that while decisions of the Commonwealth Court provide this Court with persuasive authority and guidance when appropriate, we are not bound by them. **Citizens' Ambulance Service Inc. v. Gateway Health**

*Plan*, 806 A.2d 443, 446 n. 3 (Pa.Super. 2002), *appeal denied,* 572 Pa. 763, 819 A.2d 546 (2003). Notwithstanding, for the reasons set forth below, we find Appellant has waived this issue for appellate review.

While this Court has acknowledged there is no absolute right to a hearing on a preliminary injunction, our rules and our case law clearly indicate that a hearing is the preferred procedure, for a preliminary injunction rarely will be denied without one. *WPNT Inc. v. Secret Commc'n Inc.,* 661 A.2d 409, 410-11 (Pa.Super. 1995). A hearing was held in the instant matter on December 14, 2018. At the outset, the trial court asked counsel for both parties to circle and initial the air space in dispute on photographs that had been marked as exhibits. The trial court indicated for the record and took judicial notice that the marked portion was over a building that was on the site before the construction of the Cambria Hotel. N.T., 12/14/18, at 5-6. Appellant admitted it was clear that the trial court was "very familiar with the factual predicate, having just presided over a case involving an existing property." N.T., 12/14/18, at 7.[6] At this juncture, Appellant indicated that its application for relief sought "an injunction ordering the removal of 11 encroachments from the air rights that were just pointed out to Your Honor[,]" and a declaratory judgment that it had properly triggered a right of first refusal which had lapsed. *Id*. at 8.

---

[6] The trial court corrected counsel by indicating it was "currently presiding over" the matter. *Id*. at 8.

- 14 -

Before hearing any testimonial evidence, the trial court inquired whether there were any stipulations. Counsel for Appellant responded the sole stipulation was that the parties' experts would be admitted as professional surveyors. The trial court asked for clarification regarding the encroachments, to which counsel for Appellant responded there were eight "vertical encroachments," *i.e*. air conditioning units, as well as three "horizontal encroachments" in that the hotel itself was not within the property lines. *Id*. at 10-11. Noting that Appellant never had filed for a stay or an injunction from zoning, the court indicated the focus of the hearing would be on the vertical encroachments, because there was no action it could take pertaining to the latter alleged encroachments on the present preliminary injunction motion, as only monetary damages were a viable remedy. *Id*. at 12. Counsel for Appellant did not place an objection on the record, but rather he respectfully disagreed and asked to hear from opposing counsel. *Id*.

Following further discussion, the trial court asked what Appellant deemed to be the irreparable harm which the items presently on the roof an allegedly encroaching on the easement area would cause, to which counsel responded that [d]ating back to 1924, the Pennsylvania Supreme Court consistently stated that any deprivation of a property right is, per se, irreparable harm." *Id*. at 15. When asked again to provide the court the "real emergency of irreparable harm" counsel responded that due to the mechanical equipment in Appellant's air rights, Appellant cannot use and enjoy those

rights and ended by stating, "It's that simple." ***Id***. at 16. The following exchange ensued:

> THE COURT: You want me to deny the motion immediately?
>
> [Appellant's Counsel]: No, Your Honor.
>
> THE COURT: If that's it, it will be denied. Right then and there. This is not about, you know, the—this preliminary injunction is about the contents of some machinery on a rooftop, it will get denied right now and we can save ourselves a lot of time.
>
> [Appellant's Counsel]: My client contracted to sell these air rights to a third party. We attempted to trigger the right of first refusal process. [Appellees] claimed we didn't do that properly.
>
> During the process of unwinding that, we found out these encroachments exist. It's all combined, Your Honor.
>
> We have an immediate right to sell these air rights and the fact they're refusing to honor our right of first refuse [sic] process and claiming—
>
> THE COURT: I agree there's a declaratory judgement action that might take a year or two, five years, depending how far it goes on these issues. I agree with that.
>
> We're here today, as I've cautioned you, Mr. Katz, that we are here on a preliminary injunction.
>
> You're telling me the irreparable harm is simply that there is machinery on a rooftop that you want removed, and I'm telling you that's not irreparable harm.
>
> Therefore, I'm denying the motion outright right now. Done. Okay.

N.T., 12/14/18, at 16-17. Without any additional comment or argument from counsel, the hearing adjourned.

- 16 -

Nothing in the above exchange indicates that Appellant was attempting to present the testimony of an expert witness or otherwise raise any due process concerns, nor did counsel object on the record to the trial court's ending the hearing without such testimony. Additionally, we see no other place in the record where counsel raised such an objection or argued that Appellant's due process rights were being violated. Therefore, such claims are waived on appeal. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa.Super. 1995) (stating, "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error . . . will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations omitted).

Even if Appellant properly had preserved this issue for our review, we would find it warrants no relief. The trial court afforded Appellant the opportunity to, and Appellant did, in fact, offer argument and evidence at the December 14, 2018, hearing held on its petition for a preliminary injunction. Counsel indicated on a photograph the air space at issue and was given ample opportunity to explain the reasons Appellant sought a preliminary injunction. In fact, while Appellant's expert witness was ready to testify as a surveyor,

the trial court did not dispute the area upon which Appellant argued its property had been encroached. The court had enough information before it to make a determination on the merits of the preliminary injunction. Appellant, thus, availed itself of due process.

In its Pa.R.A.P. 1925(a) Opinion, the trial court enumerated the "essential prerequisites" for a preliminary injunction. *See* Trial Court Opinion, 5/6/19, at 2 n. 2. Applying those factors, the trial court found Appellant had not met its burden and determined the case should proceed in normal course. *Id*. at 3.

Our review discloses that the trial court correctly determined, *inter alia*, that Appellant failed to show irreparable and immediate harm. As the trial court observed:

> [Appellant] has not met its burden to show irreparable and immediate harm. Not only are monetary damages calculable, there is no showing of "urgent necessity." The mere presence of generators and other air conditioning equipment is no more than a minimal inconvenience, if any, to [Appellant] which owns neither the building itself nor the adjoining ones. Nor is there a claim that public interest is involved here. Regarding status quo, it is also clear that the cost to BL Partners to move and reinstall the air conditioning equipment used for the Cambria Hotel is greater than the zero cost to [Appellant] to let the equipment remain on the roof pending this litigation.
> Finally, there is no showing that [Appellant] will likely prevail at trial. Factual issues exist whether adequate notice of an impending sale of the air rights was given to BL Partners by [Appellant] and, if so, whether BL Partner's right to purchase was timely exercised. These factual questions are likely to decide the outcome of the lawsuit and therefore this court is unable to predict the case's outcome before trial. Nor can it be known whether [Appellant's] claim of building encroachment is meaningful or

- 18 -

accurate since the ownership rights of the air space itself is disputed.

Trial Court Opinion, 5/6/19, at 2-3.

As all of the elements must be met, *see Summit Towne Ctr., Inc.*, *supra*, we discern no error of law or abuse of discretion by the trial court in denying Appellant preliminary injunctive relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/19